## State v. Lukens
*[Cite as 4 AOA 379]*

*Case No. 89AP-846*
*Franklin County, (10th)*
*Decided June 12, 1990*

*Mr. Michael Miller, Prosecuting Attorney, and Mr. Alan C. Travis, for Appellee.*

*Thomas M. Tyack & Associates Co., L.P.A., and Mr. Thomas M. Tyack, for Appellant.*

STRAUSBAUGH, J.

Defendant, Donald Edgar Lukens, appeals his conviction for contributing to the unruliness of a child from the Franklin County Common Pleas Court, Division of Domestic Relations, Juvenile Branch.

Defendant was indicted and convicted of one count in violation of R.C. 2919.24, contributing to unruliness or delinquency of a child. The indictment alleged that defendant had engaged in sexual conduct, *i.e.,* vaginal intercourse with a sixteen year old minor, Rosie Coffman ("Coffman"), on November 6, 1988.

Defendant entered a plea of "not guilty" and the case proceeded to jury trial. At trial, plaintiff, the State of Ohio, presented a number of witnesses including Coffman; her mother, Anna Coffman; private investigator, J. D. Caudill; and television reporter, Amy Walters.

The evidence indicated that on the night of November 6, 1988, Coffman was sixteen years of age. The synopsis of Coffman's testimony is that: On November 6, 1988, she was contacted by a friend, Michelle Foster ("Foster"), who informed Coffman that she had met defendant. Foster then asked Coffman if she would accompany her to defendant's residence. Coffman agreed and subsequently called a taxicab to provide transportation to defendant's apartment. Upon arrival, Coffman went to the door of defendant's apartment. Defendant gave her a twenty dollar bill to pay the cab fare. Coffman and Foster then entered defendant's residence where defendant showed them his apartment. Defendant took the girls to a guest room and told them to undress and put on black robes. Coffman and Foster entered defendant's bedroom and joined defendant in bed. Following initial sexual contact by defendant with the two girls, Foster went upstairs; Coffman remained with defendant in his bedroom. Defendant asked Coffman to perform fellatio on him, which she did. Defendant then engaged in vaginal intercourse with her.

After consummation of the sex act, defendant gave Coffman $20. Defendant and Coffman went upstairs where Foster was and defendant offered Coffman a glass of brandy. When Coffman told defendant that the next day was her birthday, defendant gave her a pink fan and a locket. Defendant gave Foster a bottle of perfume and a diamond pendant. Defendant asked Coffman for her full name, address, and birthday. Although Coffman told defendant that she would be nineteen the next day, she did provide defendant with her correct birth date. Defendant then paid Foster

$30 and gave Coffman an additional $20. Upon Coffman's request, defendant then transported Coffman to the residence of Foster's sister.

At the close of all the evidence, the case was submitted to the jury on separate counts of contributing to the delinquency of a child and contributing to the unruliness of a child. The charge of contributing to the delinquency of a child was predicated upon evidence of an engagement of sexual activity for hire. The jury returned verdicts of guilty as to both specifications.

Following the jury verdicts, defendant filed a motion for judgment of acquittal as to both specifications and also a motion for a new trial. The trial court, during the sentencing hearing, sustained defendant's motion as to the jury's finding that defendant had contributed to the delinquency of a child. The court concluded that there was insufficient evidence concerning an engagement of sexual activity for hire. The trial court overruled defendant's motion for acquittal as to the charge of contributing to the unruliness of a child and further overruled defendant's motion for a new trial.

The trial court then sentenced defendant to one hundred eighty days in jail and a fine of $1,000. The court suspended one hundred fifty days of the jail sentence and $500 of the fine contingent upon defendant's successful completion of a probation period.

Defendant now appeals to this court the judgment of the trial court, setting forth the following four assignments of error for our review:

"I. The rulings of the trial court restricting defense counsel in cross-examination from questioning the witnesses, Rosie Coffman and her mother, as to her juvenile court record, involvement in illegal activities that were not prosecuted, use and dependency upon alcohol and drugs, coupled with the exclusion by the court of all records from the court itself, Franklin County Children's Services, and the Columbus Board of Education relating to Rosie Coffman, deprived the defendant of the effective assistance of counsel and due process of the law.

"II. The instruction of the court to the jury encompassing a definition of 'unruly child' which was broader than that permitted by the language of the indictment, constitutes error that deprived the defendant of due process of law.

"III. The trial court erred in overruling the defendant's motion for mistrial after the prosecutor repeatedly attempted to interject inadmissible testimony inferring that the defendant engaged in improper activity with Rosie Coffman in 1985.

"IV. The trial court abused its discretion in imposing the sentence and terms of probation that it did upon the defendant."

Under the first assignment of error, defendant challenges the rulings of the trial court restricting the use of certain records pertaining to Coffman. The materials at issue include Coffman's juvenile records, Franklin County Children's Services' records, and Columbus public school records.

Defendant's contention at trial and in oral argument before this court concerning the use of the juvenile records of Coffman is twofold:

"(1) that the status of Coffman prior to the incident of November 6, 1988 is an element of the stated offense, therefore necessitating the introduction of the records at trial; and that "(2) the records were relevant as to the issues of bias and credibility of Coffman's testimony at trial."

At trial, the state argued that admission of Coffman's juvenile records was limited by the interaction of Evid. R. 609(D) and R.C. 2151.358(H). Evid. R. 609(D) states that "[e]vidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly." R.C. 2151.358(H) provides in relevant part that:

"* * * The disposition of a child under the judgment rendered or any evidence given in court is not admissible as evidence against the child in any other case or proceeding in any other court * * *."

While the state's desire to protect the confidentiality of juvenile records is important, this interest is not in all instances absolute. See *Davis v. Alaska* (1974), 415 U.S. 308, discussed more fully *infra*.

We initially address the issue as to whether the status of the child prior to November 6, 1988 is an element of the offense of contributing to the unruliness of a child. R.C. 2919.24(A)(1), contributing to unruliness or delinquency of a child, provides in relevant part:

"(A) No person shall * * *:

"(1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022 [2151.02.2] of the Revised Code * * *."

The thrust of defendant's argument is that it is not possible to cause or contribute to a child "becoming" an unruly child if the child is already unruly. In *State v. Caputo* (1954), 274 P. 2d 798, a similar argument was raised by a defendant charged with contributing to the delinquency of a minor. The applicable statute in *Caputo*, under

which defendant was indicted, provided for conviction of:

"* * * [A]ny person who by threats, command or persuasion, endeavors to induce any child to perform any act or follow any course of conduct which would cause it to become a delinquent child, or any person who does any act which manifestly tends to cause any child to become a delinquent child * * *." *Id.* at 799.

In *Caputo*, the state alleged that defendant had induced a minor into engaging in an act of prostitution with defendant. *Id.* Defendant made the argument that "it was impossible to cause the prosecuting witness to 'become' a delinquent child when she already was one." *Id.* at 801.

The court rejected defendant's contention, stating that:

"To become a delinquent child is not analogous to becoming a member of a lodge * * *. Having joined a lodge, we suppose one could not become more a member, but one may become a more delinquent child. * * *" *Id.* at 802.

In a similar vein, a party charged with polluting a river may argue that many others have previously dumped garbage into the stream, and that the stream was already polluted. While it may be true that such party was not the primary polluter, that party is still responsible for contributing to the pollution of the river, as any pollution has some adverse effect.

As one court has noted:

"* * * We do not recognize that a child can become so irreconcilably delinquent that no act or omission can further impair its status * * *. There is no '* * * open season as to any child who has once become a delinquent.' * * *" *Anderson* v. *State* (1963), 384 P. 2d 669, 672, overruled on other grounds (1978), 583 P. 2d 836.[1]

The obvious effect of allowing the use of evidence from juvenile records in an attempt to focus on the preexisting status of the child would be "to afford a lesser degree of protection to some minors than others * * *." *State* v. *Apostle* (1986), 512 A. 2d 947, 963. Although the primary purpose of R.C. 2919.24 is to punish a crime, an ancillary intent is the protection of children. See, *e.g., State* v. *Cialkowski* (1975), 227 N.W. 2d 406 (statute which provides in part that "[a]ny person who by any act, encourages, causes, or contributes to the delinquency, neglect, or need for special supervision, of a child under eighteen years of age, so that such child becomes, or, will tend to become, a delinquent * * * child * * *" is intended for the protection of children); *McDonald* v. *Commonwealth* (1960), 331 S.W. 2d 716 (purpose of statute providing that "[n]o person shall knowingly encourage, aid, cause, or in any manner contribute to the conditions which cause or tend to cause a child to become delinquent * * *" is to protect the morals and health of a minor).

The question as to the child's preexisting status as an unruly child is not an element of the offense and was not relevant at trial for such a purpose. Accordingly, defendant was not prejudiced at trial by the court's restriction of the juvenile records for that purpose.

Next, defendant contends that the records were relevant as to the issues of bias and credibility of Coffman's testimony at trial, arguing that the limitations at trial on the cross-examination of Coffman concerning her potential bias to testify on behalf of the state, amounted to a denial of defendant's constitutional right to confrontation.

The Sixth Amendment to the United States Constitution provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The right of confrontation is considered to be a fundamental right, applicable to the states under the Due Process Clause of the Fourteenth Amendment. *Pointer* v. *State of Texas* (1965), 380 U.S. 400. It is equally clear, however, that "[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. * * *" *Alford* v. *United States* (1931), 282 U.S. 687, 694.

Cases arising under the confrontation clause generally consider two broad categories: "* * * cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination * * *." *Delaware* v. *Fensterer* (1985), 474 U.S. 15, 18. At issue here is the latter category concerning the right to conduct cross-examination at trial.

In *Davis, supra,* at 320, the United States Supreme Court held that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness * * *." The petitioner in *Davis* was convicted of grand larceny and burglary relating to the theft of a safe from a bar. At trial, the prosecution presented critical testimony from Richard Green, a juvenile. Green testified that he had spoken with petitioner who, at that time, was standing beside a car later implicated in the crime, and was hold-

ing a crowbar near where the safe was subsequently discovered.

Before testimony, the prosecutor had sought a protective order to prevent any reference at trial to Green's juvenile record which would have revealed that the juvenile was currently on probation for burglarizing two cabins. Counsel for petitioner opposed the order, stating to the court that he was not attempting to use Green's record as a general impeachment concerning the juvenile's character as a truthful person. Rather, counsel wanted to directly show that during the same time Green was aiding the police in identifying petitioner, he was also on probation for burglary.

The trial court granted the prosecutor's motion for a protective order based on two state statutory provisions.[2] Petitioner's conviction was affirmed by the Supreme Court of Alaska, which determined that it was not required to resolve the potential conflict between a criminal defendant's right to confront an adverse witness and the statute's interest in safeguarding the anonymity of a juvenile offender.

In *Davis*, the United States Supreme Court reversed, holding that:

"* * * [T]he right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to * * * [the juvenile witness] or his family by disclosure of his juvenile record--if the prosecution insisted on using him to make its case--is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness." *Davis, supra,* at 319.

In United States v. *Abel* (1984), 469 U.S. 45, the United States Supreme Court observed the significance of allowing impeachment of a witness by showing his or her bias, stating:

"* * * Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony * * *." *Id.* at 52.

The court in *Davis* made a clear distinction between the attempted use of juvenile records to impeach the general credibility of a witness as opposed to the more specific purpose of showing a witness's potential bias. Justice Stewart wrote a special concurring opinion in *Davis* to emphasize that "* * * the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." *Davis, supra,* at 321.

Ohio courts have recognized this distinction. In *State* v. *Cox* (1975), 42 Ohio St. 2d 200, the Supreme Court of Ohio stated:

"Although the General Assembly may enact legislation to effectuate its policy of protecting the confidentiality of juvenile records, such enactment may not impinge upon the right of a defendant in a criminal case to present all available, relevant and probative evidence which is pertinent to a specific and material aspect of his defense. The record at bar does not reflect an effort to conduct a fishing expedition into the witness' juvenile background, nor an attempt to impeach her by a general showing of prior Juvenile Court appearances as the result of misconduct." *Id.* at 204. See, also, *State* v. *White* (1982), 6 Ohio App. 3d 1, 2. ("Evid. R. 609(D) and R.C. 2151.358(H) clearly exclude use of a juvenile court adjudication about a juvenile's conduct, for purposes of general impeachment of a witness' credibility. They do not necessarily limit the use of such circumstances for other valid purposes. * * *")

In the instant case, it was incumbent upon defendant to present some plausible showing, apart from a general attempt to impeach the credibility of the witness, as to why Coffman's involvement with the juvenile system was relevant to defense's cross-examination. At trial, defense counsel argued that Coffman had a lengthy juvenile record, indicating a history of involvement with the juvenile court which included prior convictions and a probationary status.

Defense counsel alleged that Coffman was also, at the time of the present trial, a witness in a felony case in which the state sought her cooperation. Counsel further alleged that Coffman had been involved in an incident in which she provided a firearm to a felon. It was the contention of the defense that while Coffman had not been charged in that incident, it was conceivable that charges could be brought in the future providing further incentive for her to cooperate with the state in the present case. Defense counsel also noted to the trial court that Coffman's commitment to Franklin County Children's Services had been terminated by the prosecutor's office shortly after she had

testified to the grand jury in the present case. Counsel for defendant argued that exploration of these matters on cross-examination was pertinent as to the issue of the witness's bias in testifying.

The trial court indicated that defense counsel would not be permitted to introduce the entire history of Coffman's juvenile involvement, but would be allowed to inquire as to whether Coffman was receiving anything in return for her cooperation in testifying in this proceeding. The trial court further allowed defense counsel to ask Coffman whether her temporary custody had been terminated as a result of this matter. The following exchange then took place between defense counsel and Coffman:

"Q. Ms. Coffman, were you -- you had been under the supervision of Children's Services for how long?

"A. For about four years.

"Q. All right. Since about 1984?

"A. Since about 1985.

"Q. All right. And you came down here and testified for the Grand Jury concerning Mr. Lukens in late February of 1989, did you not?

"A. Yes, I did.

"Q. All right. Was there any discussion between you and any law enforcement people or representatives of the Juvenile Court or your caseworker as to what would happen to your case after that point in time?

"A. No, sir.

"Q. Isn't it true that in early March a motion was then filed to change your custodial status?

"A. Motion? Yes.

"Q. So you then went down to court and had your status changed in late March or early April, correct?

"A. Yes.

"Q. And so far as you knew, was that in any way related to the fact you were, quote, unquote, cooperating with law enforcement people in the Lukens case?

"A. No, I wasn't cooperating with anyone about this case. I didn't really talk to anyone until about a month after my mother did. Well, not a month, maybe a week or two.

"Q. The first time you talked to people in November, correct?

"A. November, yes.

"Q. By that time were you then cooperating with law enforcement people?

"A. Explain to me, what do you mean by cooperating means?

"Q. Going along with them, talking to them, doing pretty much what they wanted done.

"A. No.

"Q. You weren't? Were you cooperating with Mr. Hart when you gave him the statement in January of 1989?

"A. Yeah, I cooperated then, yeah.

"Q. Was there any discussion with anybody concerning any kind of relationship between your testifying before the Grand Jury and the change in your status of being under a temporary commitment through the Children's Services in late February or early March?

"* * *

"A. No, I don't think so." (Tr. 233-235.)

As indicated above, although the trial court excluded evidence of prior juvenile proceedings, cross-examination concerning whether defendant received any benefit for testifying in this proceeding was permitted. Further, the issue as to Coffman's change in status with Franklin County Children's Services was before the jury.

Concerning the exclusion of evidence relating to any prior juvenile proceedings, based upon the record before us, we cannot adequately determine whether or not the introduction of Coffman's juvenile record would have added anything to the defense's cross-examination on the issue of bias. The record does not contain any form of *in camera* proceeding by the trial court which might have preserved for our review findings as to whether Coffman's juvenile proceedings were relevant on this issue.

Nevertheless, we find any potential error as to the limitation on cross-examination in the instant case to be harmless. Assuming that Coffman was the sole witness implicating defendant to the alleged conduct of November 6, 1988, we might hold otherwise. However, evidence concerning defendant's conduct did not rest solely upon the credibility of Coffman's testimony.

The United States Supreme Court has held that "* * * the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* [v. *California* (1967), 386 U.S. 18] harmless-error analysis. * * *" *Delaware v. Van Arsdall* (1986), 475 U.S. 673. In *Van Arsdall, supra,* the court stated that:

"* * * The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the

witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. * * *" *Id.* at 684.

In the present case, at trial, the state presented the testimony of J. D. Caudill, a private investigator, who had interviewed defendant subsequent to the incident in question. Caudill testified that he had met with defendant on January 30, 1989. Caudill related that during the course of that interview, defendant had admitted having sexual intercourse with Coffman on November 6, 1988. Caudill testified that defendant had given a description of the events of that evening, including paying the cab fare for the two girls, showing them his apartment, asking them to put on black robes, and providing both girls money and gifts following the sexual activity.

Given the unrebutted testimony of Caudill corroborating Coffman's account of defendant's conduct, along with the trial court's ruling allowing defendant some opportunity to cross-examine Coffman as to the issue of bias, we find any possible error in the trial court's restrictions concerning Coffman's juvenile proceedings to be harmless beyond a reasonable doubt.

Although the better practice might have been for the trial court to have conducted an *in camera* review of the juvenile records in order that there could be a review of whether the records were relevant as to bias, it is important in this case that the trial court permitted questioning concerning whether the witness was receiving any benefit for her testimony. The confrontation clause guarantees "* * * an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. * * *" *Delaware, supra*, at 20.

Defendant further contends that the trial court erred in excluding Coffman's Franklin County Children's Services' records and her school records. Defendant argues that these materials would have shown that Coffman was limited intellect, had experience continuing problems with drug and alcohol abuse, had a tendency to fantasize, and had undergone psychological evaluations showing a tendency not to be factual in her memory and in her presentation of materials.

As trial, defendant argued that these records were pertinent as to the issue of Coffman's credibility and as to her status under the unruly charge. The trial court determined that the records

in question were not relevant and denied their admissibility.

To the extent that defendant contends that these records were admissible to show Coffman's prestatus as an element of the unruly offense, we find no error in the trial court's ruling. Concerning the issue of Coffman's credibility as it relates to her testimony of the events of November 6, 1988, defendant has failed to show the relevancy of these records nor has defendant supplied this court with any authority to support their admissibility.

Defendant's first assignment of error is not well-taken and is overruled.

Under the second assignment of error, defendant claims that the trial court's instruction to the jury constituted a definition of unruly child which was broader than that permitted by the language of the indictment, thereby depriving defendant of due process of law.

The indictment, charging defendant with contributing to the unruliness of a child, stated in pertinent part:

"The Jurors of the Grand Jury * * * do find and present that *Donald E. Lukens* * * * on or about the sixth day of November * * * [1988] within the County of Franklin * * * in violation of section 2919.24 of the Ohio Revised Code, did recklessly aid, abet, induce, cause, encourage, or contribute to a child or ward of the Juvenile Court becoming an unruly child or a delinquent child as defined in sections 2151.02 and 2151.022 of the Ohio Revised Code, to wit: did engage in sexual conduct with Rosie Coffman, a minor, age sixteen (16) years, to wit: vaginal intercourse * * *."

The trial court, over defendant's objection, gave the jury the following instruction defining an unruly child:

"Now, an unruly child includes any child who does not subject himself or herself to the reasonable control of his or her parents, teachers, guardian, or custodian by reason of being wayward or habitually disobedient; who so deports himself as to injure or endanger the health or morals of himself or others; who is found in a disreputable place, visits or patronizes a place prohibited by law, or associates with vagrant, vicious, criminal, notorious or immoral persons; who engages in an occupation prohibited by law, or is in a situation dangerous to life or limb, or injurious to the health or morals of himself or others; or who has violated a law applicable only to a child."[3] (Tr. 456.)

Defendant's objection was based upon the ground that since the only conduct alleged in the indictment was sexual intercourse between defendant and the minor, the breadth of the instructions

would permit the jury to consider alternatives which had no application to the facts or upon which no evidence was presented.

Crim. R. 33(E)(4) provides that no judgment of conviction shall be reversed because of a misdirection of the jury, unless the defendant was or may have been prejudiced. See, also, *Napier* v. *State* (1914), 90 Ohio St. 276, 278 (jury instructions which are claimed to be erroneous are harmless and will not mandate reversal where the interests of the complaining party have not been substantially prejudiced).

While we agree with defendant's contention that the instructions were overly broad, we find any error to be harmless beyond a reasonable doubt and we find no substantial prejudice to defendant as a result thereof. In the present case, the indictment, charging defendant with contributing to the unruliness of a child, alleged that defendant had engaged in sexual intercourse with a sixteen year old female on November 6, 1988. Evidence of such an act, resulting in an adverse effect upon the health or morals of a child, would be sufficient to sustain a conviction under R.C. 2151.022(C), which defines an unruly child as any child "[w]ho so deports himself as to injure or endanger the health or morals of himself or others[.]"

It is undisputed that defendant engaged in an act of sexual intercourse with Coffman on the night in question. Further, Coffman testified that her health was injured as a result of the sexual activity and that she was not a willing participant. This evidence was unrebutted. As a matter of law, a child in unruly who engages in sexual activity of the type herein as it is inherently injurious to the morals of the child or others. Thus, the instruction concerning unindicted conduct was harmless beyond a reasonable doubt.

Defendant's second assignment of error is overruled.

Defendant's third assignment of error contends that the trial court erred in overruling defendant's motion for mistrial after the prosecutor repeatedly attempted to interject inadmissible testimony inferring that the defendant engaged in improper activity with Coffman in 1985.

Defendant refers to instances throughout the proceedings during which reference was made to an alleged encounter in 1985 between defendant and the minor, then thirteen years old, occurred. The initial reference to this matter at trial took place during the direct testimony of Coffman's mother, Anna Coffman, when she was questioned by the state as to how she first came to know defendant. Later, in response to questions by the state to Anna Coffman pertaining to a conversation she had engaged in with defendant regarding defendant's knowledge of Coffman's age, a reference to 1985 came up.

Defendant notes that the subject of 1985 was again brought up during cross-examination of Coffman. Defense counsel had handed a business card to Coffman and counsel then asked her when she had received the card. Coffman responded that she had obtained the card in 1985 when she was thirteen.

Defendant next directs our attention to the testimony of television reporter, Amy Walters ("Walters"), who had become involved in the present case on behalf of a local television station and had given testimony about the background concerning her first contact with Anna Coffman. Walters further testified regarding a telephone conversation between Anna Coffman and defendant that Walters had overheard through a three-way telephone connection provided by Anna Coffman. References to the alleged 1985 incident arose during Walters' testimony.

In general, the granting of a mistrial lies within the sound discretion of the trial court, *State* v. *Palmieri* (App. 1938), 28 Ohio Law Abs. 398, and should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected. *Bowman* v. *Alvis* (1950), 88 Ohio App. 229.

Concerning the direct testimony of Anna Coffman, the state maintains that any questions to Anna Coffman concerning whether defendant had knowledge of Coffman's age in 1985 were relevant in proving an essential element of its case. More specifically, the state contends that as it was required to prove that defendant acted recklessly in contributing to the unruliness of the minor, proof that defendant was told the minor's age in 1985 was substantial evidence that defendant knew the child's age was only sixteen in 1988.

Subsequent to Anna Coffman's testimony, defense counsel requested that the trial court strike all testimony concerning any problems that the mother may have experienced with her daughter starting in 1985 as a result of the minor's alleged initial contact with defendant. The trial court then instructed the jury to disregard that portion of Anna Coffman's testimony. Based upon a review of the trial transcript, we cannot say that the state's question to Anna Coffman were calculated to unduly prejudice defendant. Given the

trial court's admonition to the jury to disregard any references to the 1985 incident, we do not find reversible error based upon that testimony.

Concerning the remarks by Coffman as to her receipt of defendant's business card, we note that her comment that she obtained the card in 1985 when she was thirteen was invited on cross-examination by defense counsel. Further, Coffman's response gave no indication as to any conduct or activity which might have taken place at that time between the witness and defendant.

The testimony of Walters indicates that she stated that during her initial contact with Anna Coffman, Anna Coffman informed her that "[t]here's a man who's been having sex with my daughter, and my daughter was only 13. Now she's only 16, and I don't know what to do." (Tr. 264.) No objection was made to this testimony.

Later, Walters recounted what she had overheard during the telephone conversation between Anna Coffman and defendant. Walters testified that Anna Coffman had told defendant:

"* * * 'I've talked to you before about this. I want you to quit messing around with my daughter. I called you years ago and told you not to do this anymore, and you keep messing with her.' * * *" (Tr. 268.)

Walters further testified that defendant had replied, "I didn't know she was only 13." (Tr. 268.)

Again, no objection was made to the testimony. Following dismissal of the witness, counsel for defense approached the bench and stated the following to the trial court:

"* * * Basically we've had the interesting occurrence of having basically this gal supposedly describe, I guess, the sequence of hearing [defendant] * * * but, in essence, sliding in an accusation that there was sexual intercourse at the age of 13 * * *." (Tr. 271.)

Counsel for the prosecution then indicated to the trial court that the witness had never referred to "the 13 thing" in any prior interview. The trial court admonished the state not to allow any further references to that alleged incident. The trial court then overruled defendant's motion for a mistrial. Given defendant's failure to timely object to the testimony of Walters, we do not believe that the trial court erred in failing to grant defendant's motion for a mistrial.

Viewing the record as a whole, although references to an incident in 1985 arose at trial, we do not find that they were the result of a deliberate attempt by the state to prejudice defendant nor do we believe that any possible prejudice thereby would warrant the granting of a mistrial.

Accordingly, defendant's third assignment of error is overruled.

Under the fourth assignment of error, defendant asserts that the trial court abused its discretion in imposing the sentence and terms of probation that it did upon defendant.

In general, an appellate court will not review the trial court's discretion in imposing a sentence where the sentence is within the applicable statutory limitations. *Toledo* v. *Reasonover* (1965), 5 Ohio St. 2d 22, 24. In sentencing a defendant for a misdemeanor, the trial court must consider the factors set forth in R.C. 2929.22. Failure to do so constitutes an abuse of discretion. *Cincinnati* v. *Clardy* (1978), 57 Ohio App. 2d 153. A judge is presumed, in the absence of a showing to the contrary, to have considered in the sentencing process the standards mandated by R.C. 2929.22. *Columbus* v. *Jones* (1987), 39 Ohio App. 3d 87, 89.

The thrust of defendant's argument, under this assigned error, concerns the following comment by the trial court during the sentencing hearing:

"As I mentioned a few moments ago, the function of this Court and the function of the law which forbids contributing to the delinquency of minors is to protect children. * * *" (Tr. 12.)

Defendant contends that while the trial court, at the sentencing hearing, had found insufficient evidence to sustain a conviction for contributing to the delinquency of a minor, the court then proceeded, based upon the above-quoted language, to sentence defendant for that crime. We disagree.

We view the above comment by the trial court concerning "contributing to the delinquency of minors," as no more than a mere inadvertence. A review of the entire sentencing hearing provides no support for defendant's contention that the trial court sentenced defendant under the wrong count.

During sentencing, the trial court indicated that the applicable statutory provisions had been considered. The statutory penalty for contributing to the unruliness of a minor, a misdemeanor of the first degree, provides for a term of imprisonment of not more than six months and a fine of not more than $1,000. See R.C. 2929.21. In the present case, the sentence imposed was within the statutory guidelines. We find no abuse of discretion on the part of the trial court in sentencing defendant.

Defendant's fourth assignment of error is without merit and is overruled.

Based upon the foregoing, defendant's four assignments of error are overruled, and the judgment of the Franklin County Common Pleas

Court, Division of Domestic Relations, Juvenile Branch, is affirmed.

*Judgment affirmed.*

YOUNG, J., and WHITESIDE, J., concur.

[1] In Anderson v. State (1963), 384 P. 2d 669, 672, overruled on other grounds (1978), 583 P. 2d 836, the statute for contributing to the delinquency of a child provided for conviction of any person "* * * who shall by threats, command or persuasion, endeavor to induce any child to do or perform any act or follow any course of conduct which would cause such child to become a delinquent child, or who shall do any act which manifestly tends to cause any child to become a delinquent child * * *."

[2] The trial court's ruling on the motion was based upon Alaska Rule of Children's Procedure 23 and Alaska Statute Section 47.10.080(g) (1971). Rule 23 provides in part that "[n]o adjudication, order, or disposition of a juvenile case shall be admissible in a court * * * except for use in a presentencing procedure in a criminal case where the superior court * * * determines that such use is appropriate." Section 47.10.080(g) states in relevant part that "[t]he commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceedings in any other court * * *."

[3] The trial court, in instructing the jury on the definition of an unruly child, quoted from the language of R.C. 2151.022 which provides several definitional subsections. The trial court excluded the following two subsections: (1) R.C. 2151.022(B), which defines an unruly child as any child "[w]ho is an habitual truant from home or school;" and (2) R.C. 2151.022(D), which defines an unruly child as any child "[w]ho attempts to enter the marriage relation in any state without the consent of his parents, custodian, legal guardian, or other legal authority[.]"

WHITESIDE, J., concurs separately.

Although I concur in the judgment, I am unable to concur in some of the implicit holdings in the majority opinion. Rather, the first three assignments of error would be well-taken if the error were not harmless beyond a reasonable doubt.

The trial court unduly restricted cross-examination of Rosie Coffman and her mother. Failure at least to conduct a full *in camera* inspection of the juvenile records violated the standards of *Davis* v. *Alaska* (1974), 415 U.S. 308. The majority dismisses the issue by holding that the conduct (status) of Rosie Coffman prior to November 6, 1988, is irrelevant because it is not an element of the offense of contributing to the unruliness of a child. In so doing, cases from other states are relied upon which do not answer the question before us. The fact that a child has been delinquent or unruly in the past does not necessarily mean either that that child is presently delinquent or unruly or that the nature, type, or degree of unruliness or delinquency cannot be changed to the detriment of the child. But *these are issues for the jury* to determine based upon a full review of *all* relevant evidence.

Evidence as to the actual status (conduct) of the child both before, during, and after the alleged contributing act of the defendant is relevant, not as an element of the offense but as bearing upon the issue of the existence of the necessary causal connection between the alleged contributing conduct of the defendant and the delinquency or unruliness of the child. See Annotation (1968), 18 A.L.R. 3d 824.

Under the former Ohio law, this distinction was set forth in the second paragraph of the syllabus of *State* v. *Miclau* (1957), 167 Ohio St. 38, as follows:

"Where it is charged only that defendant did aid, abet, induce, cause, encourage or contribute toward the delinquency of a minor child, it is essential, in order to sustain a conviction, to establish by evidence beyond a reasonable doubt that there was some delinquency of such child which defendant either aided, abetted, induced, caused or to which he contributed." Compare *State* v. *Gans* (1958), 168 Ohio St. 174.

Prior to 1986, the offense of contributing was defined as part of the juvenile code by R.C. 2151.41, which read in pertinent part as follows:

"No person shall abuse a child or aid, abet, induce, cause, encourage, or contribute to the dependency, neglect, unruliness, or delinquency of a child or a ward of the juvenile court, or act in a way tending to cause delinquency or unruliness in such child. * * *"

Effective March 6, 1986, the offense of contributing was removed from the juvenile code and placed in the criminal code by repealing former R.C. 2151.41, *supra,* and enacting R.C. 2919.24, which reads in pertinent part as follows:

"(A) No person shall do either of the following:

"(1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022 [2151.02.2] of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code;

"(2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022 [2151.02.2] of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code."

At the same time, the offense as part of the criminal code became subject to the rule of construction for criminal cases set forth in R.C. 2901.04(A) as follows:

"Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

We are not here called upon the interpret R.C. 2919.24(A)(2), which prohibits acting in a way *tending* to cause delinquency or unruliness in a child (the equivalent of the second portion of the former statute) since no charge has been made charging such an offense.

Rather, at issue is what it means to "aid, abet, induce, cause, encourage, or contribute to a child or ward *becoming* an unruly child * * * or a delinquent child * * *." The word "becoming" is the present participle of the verb "to become" which means to come into existence, or change or develop. Webster's Third New International Dictionary (1966), defines the transitive verb "to become" to mean "to come to exist or occur" or "to pass from a previous state or condition and come to be: grow or change into being through taking on a new character or characteristic"

Here, the only offense charged by the indictment was that defendant "did recklessly aid, abet, induce, cause, encourage, or contribute to a child[1] * * * to wit: did engage in sexual conduct with Rosie Coffman, a minor, age sixteen (16) years, to wit: vaginal intercourse * * *."

The evidence is overwhelming that the conduct charged did in fact occur in that defendant did engage in sexual conduct (vaginal intercourse) with Rosie Coffman, a sixteen-year-old minor.

Defendant made out-of-court statements which constitute an admission (or confession) to the conduct involved, even though his version differed from that of Rosie Coffman in some respects. Defendant at first denied having sex with Rosie Coffman but eventually admitted he did to a private investigator who had been engaged by an attorney for defendant (not trial counsel) to talk with defendant. Defendant admitted that he had arranged for Michelle Foster (or Mercedes) to come to his apartment, she having been referred to him by one Leandra Crowley. Michelle called back and asked if it was acceptable to bring another girl along, namely Rosie Coffman. The two arrived at his apartment, and he paid their taxicab fare. At first, defendant stated he had sex only with Michelle while having Rosie wait upstairs. During the interview, defendant admitted having sex with Rosie Coffman as well. He verified some of the details related by Rosie Coffman, including the use of black robes and payments of money.

In light of this unrefuted testimony as to defendant's confession to the investigator engaged by his own then attorney, any questions as to Rosie Coffman's credibility become insubstantial. Likewise, defendant has not suggested that Rosie Coffman was a practicing teenage prostitute nor that the sought-for records might reveal a long history of prostitution. None of the evidence suggests that Rosie Coffman had previously, much less habitually, engaged in prostitution. Defendant's own statement was that he made his arrangements with the other woman, Michelle, and that she requested permission to bring along another girl who turned out to be Rosie Coffman.

. Defendant's request for the records was based primarily upon other types of conduct which could constitute unruliness under R.C. 2151.022 but with which defendant was not charged, even though considerable evidence concerning such other types of conduct was admitted and the trial court erroneously charged upon them over defense objection.

Since the error was harmless beyond a reasonable doubt, I concur in the portion of the majority opinion so holding and in the overruling of the first assignment of error.

The same is true with respect to the second assignment of error. The error is manifest since the indictment charged only that defendant engaged in sexual conduct with the minor. However, I concur in the discussion in the majority opinion finding such error to be harmless beyond a reasonable doubt.

Likewise, I find error in the prosecutor's injection of evidence that defendant engaged in similar activity with the same minor in 1985. However, the trial court handled the situation well by instructions and did not abuse its discretion in overruling the motion for mistrial, especially in light of the overwhelming evidence, including defendant's admissions referred to above, that he did in fact engage in sexual conduct with the minor on the date charged. Defendant was not prejudiced by the repeated efforts to refer to an earlier contact between the minor and defendant. Accordingly, I concur in the overruling of the third assignment of error.

I concur in the majority opinion with respect to the fourth assignment of error.

Accordingly, I concur in the opinion with the reservations stated herein and in the judgment.

---

[1] Since engaging in sexual intercourse by an adult is not in itself a criminal offense, it is doubtful that the indictment charged an offense of contributing to delinquency as defined by R.C. 2151.02, which the trial court dismissed, although the indictment is sufficient to charge contributing to unruliness.