OPINION
Defendant-appellant Troy Fox appeals his conviction and sentence in the Stark County Court of Common Pleas on one count of aggravated murder with a firearm specification and one count of aggravated robbery. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On the afternoon of October 11, 1996, Barry Anslow and Ron Warren were driving Barry's new black Camero in an area of Bolivar, Ohio known as "The Boulevard". After encountering appellant at a local gas station, Anslow agreed to drive appellant to Canton in order to buy marijuana from Johnny Bartko.
Appellant met Bartko in May, 1996, when Kelsey Amos, a co-worker of appellant and a regular customer of Bartko, introduced them. Previously, Amos had been buying marijuana from Bartko for appellant. However, Amos became tired of being appellant's "go between", so he eventually introduced the two. Thereafter, appellant became a regular customer of Bartko. Prior to October 11, 1996, appellant had commented to friends and acquaintances that he wanted to rob and kill Bartko, whom he referred to as "the dope man".
When the trio arrived in Canton, appellant followed the usual routine in contacting Bartko. Appellant informed Anslow and Warren that another individual was with Bartko and they needed to wait a short time before proceeding to Bartko's house. Upon their arrival, Anslow parked the Camero in an alley directly behind the house. Because Bartko did not like to sell drugs to strangers or to transact business in the presence of strangers, Warren, who was unknown to Bartko, remained in the backseat of the vehicle while Anslow and appellant entered the residence. As the two approached the house, Anslow noticed appellant had a gun.
Upon entering the house, Bartko led appellant and Anslow upstairs to his bedroom. After a few moments, Anslow decided to wait downstairs because Bartko's glances made him feel uncomfortable. Thereafter, Anslow heard a "pop", which he believed to be a gun shot.[1] Seconds later, appellant ran downstairs and instructed Anslow to leave. Once inside Anslow's car, appellant placed the gun on the floor between his legs, removed a bag of marijuana, and gave Anslow $200 from Bartko's wallet. During the drive back to Bolivar, appellant threw the wallet out of the car window.
After returning to Tuscarawas County, the three spent the night at Warren's house. Upon appellant's request, Warren hid the weapon underneath the steps of his house. Appellant instructed Anslow and Warren as to an alibi. If asked about their whereabouts that evening, they were to reply they were at a friend's house.
After several days, the police questioned Anslow regarding the events of the evening of October 11, 1996. Initially, Anslow provided the alibi which appellant had instructed him to use. However, when further confronted, he relented and confessed to his involvement in the crimes against Bartko. When the police questioned Warren, he corroborated every pertinent detail of Anslow's version of the events.
On October 24, 1996, appellant was arrested and charged with aggravated murder and aggravated robbery in connection with the events of the evening of October 11, 1996. Thereafter, the Stark County Grand Jury indicted appellant on one count of aggravated murder, in violation of R.C. 2903.01(A), one count of aggravated murder, in violation of R.C. 2903.01(B), each with death penalty and firearm specifications, and one count of aggravated robbery, in violation of R.C. 2911.01, with a firearm specification. The indictment also charged Anslow with one count of complicity to commit aggravated robbery with a firearm specification.
Prior to trial, the State filed a Motion In Limine asking the trial court to preclude evidence of the juvenile adjudication of delinquency for Barry Anslow. The trial court tentatively sustained the State's motion relative to this evidence, and continued to preclude its admission throughout the guilt phase of the trial. The trial court did, however, allow the evidence to be admitted during the mitigation phase of the trial.
The case proceeded to a jury trial. At the close of evidence, appellant requested a jury instruction on accomplice testimony relative to the testimony of Ron Warren. The trial court overruled this request finding the evidence did not support such an instruction.
After hearing the evidence and deliberations, the jury found appellant guilty of aggravated murder, in violation of R.C.2903.01(B), and guilty of aggravated robbery. The jury also found appellant guilty of the death penalty and firearm specifications. However, the trial court entered a judgment of acquittal for the R.C. 2903.01(A) count of murder[2].
The trial proceeded to the mitigation phase. After deliberating on the evidence presented at the mitigation hearing, the jury recommended a term of life imprisonment without the possibility of parole. The trial court accepted the jury's recommendation and imposed this sentence. In addition, the trial court sentenced appellant to ten years on the aggravated robbery charge and three years for the firearm specifications. The court ordered the sentences to be served consecutively.
It is from this conviction and sentence appellant prosecutes this appeal raising the following assignments of error:
 I. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL WHEN THE TRIAL COURT PROHIBITED APPELLANT FROM INTRODUCING THE JUVENILE ADJUDICATION OF BARRY ANSLOW IN ORDER TO ESTABLISH BIAS DURING THE GUILT PHASE. (TR, VOL. 9 AT 22 — 25)
 II. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT FAILED TO GIVE THE ACCOMPLICE INSTRUCTION, AS TO WITNESS RON WARREN, AT THE CONCLUSION OF THE GUILT PHASE. (TR, VOL. 9 AT 2 — 5)
 I
In his first assignment of error, appellant maintains he was denied his constitutional right to a fair trial by the trial court's preclusion of evidence of the juvenile adjudication of delinquency for Barry Anslow.
Appellant sought to introduce evidence of Anslow's juvenile record for purposes of demonstrating his bias in testifying in the instant case. The trial court's decision to exclude this evidence during the guilt phase of appellant's trial was based upon Evid. R. 609, which governs impeachment of a witness with evidence of a criminal conviction.
Evid R. 609 (D) states, "[e]vidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly." The relevant statute governing the admissibility of juvenile adjudications is R.C. 2151.358(H), which provides, in pertinent part:
 (H) * * * The disposition of a child under the judgment rendered or any evidence given in court shall not operate to disqualify a child in any future civil service examination, appointment, or application. Evidence of a judgment rendered and the disposition of a child under the judgment is not admissible to impeach the credibility of the child in any action or proceeding. Otherwise, the disposition of a child under the judgment rendered or any evidence given in court is admissible as evidence for or against the child in any action or proceeding in any court in accordance with the Rules of Evidence * * *
In interpreting R.C. 2151.358, the Ohio Supreme Court held inState v. Cox (1975), 42 Ohio St.2d 200, paragraph 2 of syllabus:
 Although the General Assembly may enact legislation to effectuate its policy of protecting the confidentiality of juvenile records, such enactments may not impinge upon the right of a defendant in a criminal case to present all available, relevant and probative evidence which is pertinent to a specific and material aspect of his defense.
Although Evid. R. 609 (D) and R.C. 2151.358(H) clearly exclude the use of a juvenile court adjudication for purposes of general impeachment of a witness' credibility, those rules do not necessarily limit the use of juvenile records for other valid purposes, such as demonstrating a witness' potential bias toward a party in the litigation. State v. Lukens (1990), 66 Ohio App.3d 794,802. "A defendant who seeks to cross-examine a juvenile witness with juvenile records must `present some plausible showing' as to a proper purpose and use which would not include an attempt to merely impeach the witness's credibility." State v.Pirman (1994), 94 Ohio App.3d 203, 210 (Citation omitted).
The United States Supreme Court, in Davis v. Alaska (1974),415 U.S. 308, recognized that a State's policy prohibiting the admission of a juvenile record at trial may have to give way to a defendant's Sixth Amendment Right of Confrontation. The United States Supreme Court concluded:
 * * * [T]he right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to [the juvenile witness] or his family by disclosure of his juvenile record — if the prosecution insisted on using him to make its case — is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.
 Id. at 319.
In Davis, the petitioner was convicted of grand larceny and burglary relating to the theft of a bar. Id. at 308. During the trial, the prosecution presented critical testimony from a juvenile, who testified, while on an errand for his mother, he confronted petitioner, who was standing beside a late model Chevrolet, holding a crowbar, near where the stolen safe was subsequently discovered. Id. at 310.
Prior to trial, the prosecutor moved for a protective order to prevent any reference to the witness' juvenile record by the defense in the course of cross-examination. Id. At the time of trial and at the time of the offense, the juvenile was on probation by order of a juvenile court after having been adjudicated a delinquent for burglarizing two cabins. Id. at 311. The trial court granted the prosecutor's motion for protective order based upon two Alaska statutory provisions comparable to R.C. 2151.358(H). The Supreme Court of Alaska affirmed petitioner's conviction, determining it was not required to resolve the potential conflict between a criminal defendant's right to confront an adverse witness and the statute's interest in safeguarding the anonymity of a juvenile offender. Id. at 314.
The United States Supreme Court granted certiorari limited to the question of whether petitioner was denied his right under the Confrontation Clause to adequately cross-examine the juvenile. In reversing the Alaska Supreme Court, the United States Supreme Court "made a clear distinction between the attempted use of juvenile records to impeach the general credibility of a witness as opposed to the more specific purpose of showing a witness's potential bias." Lukens, supra, at 802.
Similarly, in Lukens, supra, the witness whose juvenile record the defendant sought to introduce for purposes of showing potential bias, had a history of involvement with the juvenile court which included prior convictions and a probationary status.Id. at 803. Additionally, at the time of trial, the juvenile was a witness in a felony case in which the State sought her cooperation. Id. Defense counsel also alleged the juvenile "had been involved in an incident in which she provided a firearm to a felon." Id. Although the juvenile had not been charged in connection with the incident, defense counsel contended charges could conceivably be brought against her in the future, providing her with further incentive to cooperate with the State in its case against the defendant. Id.
In the case sub judice, appellant's defense counsel sought to introduce evidence of Barry Anslow's juvenile records in order to demonstrate bias on the part of Anslow in testifying against appellant. Specifically, appellant maintains the evidence would demonstrate Anslow was familiar with the workings of the criminal justice system and the value of cooperating with the police and prosecutors.
Although we agree with appellant that juvenile records may be used for the purpose of showing a witness' potential bias, we find appellant has failed to "present some plausible showing" as to the proper purpose and use of the juvenile records of Barry Anslow, which would not include an attempt to merely impeach his credibility. Unlike the witnesses in Davis, supra, and in Lukens,supra, Anslow was not on probation through the juvenile court at the time of the offense or at the time of trial. A review of the record fails to demonstrate that appellant's defense counsel sought to use Anslow's juvenile records for any other purpose than attacking Anslow's general credibility and character.[3]
If, by testifying against appellant, Anslow helped himself in the previous juvenile case, e.g., preventing the revocation of probation, then appellant might be able to show bias. However, Anslow's testimony had absolutely no impact on his prior juvenile convictions.
Accordingly, we find the trial court did not err in precluding appellant from introducing the juvenile records of Barry Anslow into evidence pursuant to Evid. R. 609 (D).
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant asserts the trial court erred in failing to give the cautionary instruction of R.C. 2923.03(D) concerning the testimony of Ron Warren. Appellant claims he was denied his constitutional right to a fair trial as a result of the court's refusal to administer the requested charge.
"[I]t is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge." State v. Scott (1986), 26 Ohio St.3d 92, 101 (Citation omitted).
Under R.C. 2923.03(D), a specific charge as to the credibility of an accomplice is required if an accomplice testifies. Appellant argues Ron Warren was an accomplice. We disagree with this characterization of Warren.
Although Warren accompanied appellant and Anslow to Canton with the knowledge appellant intended to buy drugs from Bartko, Warren remained in the backseat of the vehicle while appellant and Anslow entered Bartko's residence to consummate the purchase. Warren neither witnessed nor participated in the aggravated robbery or murder of Bartko. On the return trip to Bolivar, Warren smoked some of the marijuana appellant obtained, but during that drive, neither appellant nor Anslow discussed with him what occurred inside Bartko's residence. Warren admits hiding the gun upon appellant's request, however, he testified he did so without knowledge of the killing. These actions do not demonstrate that Warren assisted, encouraged, or participated in the crimes against Bartko. Accordingly, we conclude Warren was not an accomplice and; therefore, the trial court was not required to instruct the jury on accomplice testimony.
Assignment of error two is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J., Farmer, P.J. and Gwin, J. concur
 JUDGMENT ENTRY
CASE NO. 97CA0073
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Bartko, in fact, died as a result of a single gun shot wound to the back of his head.
[2] The jury found appellant guilty of the R.C. 2903.01(A) count of aggravated murder, but found, relative to the R.C.2929.04(A)(7) specification, that appellant did not act with prior calculation and design. In order to clarify this inconsistency, the trial court submitted interrogatories to the jury. After a review of the answers to the interrogatories, the trial court entered the judgment of acquittal relative to this count of the indictment.
[3] The trial court permitted appellant to cross-examine Anslow about the nature of his plea agreement with the State in exchange for his testimony at appellant's trial.