OPINION
Defendant-appellant, Michael D. Jackson, appeals his conviction in the Belmont County Court, Western Division, for assault.
In August 1998, James Buchanan, an inmate at the Belmont Correctional Institute, reported that he had been assaulted by appellant, a corrections officer at the facility. The Ohio State Highway Patrol investigated and determined that there was sufficient evidence to pursue criminal charges.
On October 7, 1998, a Belmont County grand jury indicted appellant on one count of assault in violation of R.C. 2903.13(A), a first-degree misdemeanor, and one count of dereliction of duty in violation of R.C.2921.44, a second-degree misdemeanor. The case proceeded to a jury trial on January 20, 1999. The trial court granted plaintiff-appellee, the State of Ohio, represented by the Belmont County Prosecutor's Office, leave to dismiss the dereliction of duty charge. At trial, Buchanan, another inmate and another corrections officer testified that appellant had assaulted Buchanan. On January 21, 1999, the jury returned a verdict finding appellant guilty of assault.
On January 26, 1999, the court sentenced appellant to 180 days in jail with 90 days suspended. This appeal followed.
Appellant's first assignment of error states:
 "THE TRIAL COURT ERRED WHEN IT EXCLUDED TESTIMONY THAT THE STATE'S CRITICAL WITNESS DISLIKED AFRICAN-AMERICANS AND THAT THE WITNESS WAS TO RECEIVE FAVORABLE TREATMENT FOR HIS TESTIMONY. [TR., 193-95]."
John Tate (Tate), a corrections officer at the prison, claimed to have witnessed the assault. At trial, appellant sought to impeach Tate's testimony by eliciting extrinsic evidence in the form of witness testimony to demonstrate specific instances of bias and racial prejudice by Tate. (Tr. 193-195). The trial court excluded the evidence, finding that the evidence was not relevant and that whatever probative value it offered would outweigh its prejudicial nature. (Tr. 194-195).
Admission or exclusion of evidence is within the sound discretion of the trial court to determine and this court will not reverse that decision absent an abuse of discretion. State v. Finnerty (1989),45 Ohio St.3d 104, 107. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
Under Evid.R. 616(A), a witness may be impeached by a showing of bias, prejudice, interest, or any motive to misrepresent either by examination of the witness or by extrinsic evidence. The impeachment evidence must be relevant as required by Evid.R. 402. However, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). Also, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B).
In this case, the evidence appellant sought to introduce was admissible under Evid.R. 616(A). However, it cannot be said that the trial court abused its discretion in finding that the evidence was not relevant or that the probative value of such evidence would have been substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Moreover, appellant's counsel elicited from Tate on cross-examination that he had used an improper racial remark, specifically the "n" word, in the past. Therefore, the probative value of the additional extrinsic evidence appellant sought to introduce could be considered as needless presentation of cumulative evidence and causing undue delay.
Accordingly, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT ERRED WHEN IT FAILED TO DECLARE A MISTRIAL DURING THE TESTIMONY OF INFORMANT JAMES BUCHANAN. [TR., 62-63]."
 Near the conclusion of the direct examination of Buchanan, the victim, by appellee, the following transpired:
 "Q. And were you interviewed by staff at the institution about the incident and was it investigated?
"A. Yes it was investigated.
"Q. Do you know who investigated it?
 "A. I believe Mr. Burchett, he's an investigator, he questioned me about it, took a statement from me.
"Q. And after the statement, uh, what was done?
"A. I went ___ (inaudible).
"MR. McNAMARA: I object.
"THE COURT: Excuse me?
 "MR. McNAMARA: Question that was asked what was done unless it means by him, he wouldn't know, so, I'm going to object.
 "THE COURT: Yes, Ms. Yonak your question was what was done and Mr. Buchanan only what you know was a fact not what you've been told but what you specifically observed what occurred if anything.
 "[A]. I spoke to the highway patrol, he took, he questioned me and took a statement, I was given a polygraph test.
"MR. McNAMARA: I object.
 "THE COURT: Sustained. The Jury will disregard the reference by the witness to a polygraph examination." (Tr. 62).
Appellant maintains that since the jury's determination at trial weighed heavily upon which witnesses they believed to be credible, Buchanan's testimony that he submitted to a polygraph examination bolstered his credibility and, thus, amounted to prejudicial error. Additionally, appellant asserts that the limiting instruction given by the trial court subsequent to sustaining his objection did not cure the effect of the error.
The granting of a mistrial is within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 182. A reviewing court will not reverse the judgment of a trial court unless the court abused its discretion. State v. Abboud (1983), 13 Ohio App.3d 62. In a criminal case, a mistrial should not be declared, "merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected." State v. Lukens (1990),66 Ohio App.3d 794, 809. A mistrial, "need be declared only when the ends of justice so require and a fair trial is no longer possible." State v.Franklin (1991), 62 Ohio St.3d 118, 127.
In this case, any error arising from Buchanan's comment regarding a polygraph examination was harmless in view of the testimony presented at trial. It is difficult to speculate as to what the jury could or could not infer from the comment, and, as the Ohio Supreme Court has stated, it is presumed that the jury will follow the instructions given to it by the judge. State v. Stallings (2000), 89 Ohio St.3d 280, 286. The record reflects that the trial court admonished the jury to disregard Buchanan's comment. In addition, results of the polygraph were not testified to.
In sum, appellant has failed to demonstrate how Buchanan's comment prejudiced him or affected his substantial rights. Given the totality of the circumstances, the trial court did not abuse its discretion in deciding not to order a mistrial.
Accordingly, appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT ERRED WHEN IT PERMITTED PROSECUTORIAL MISCONDUCT. [TR., 62-63, 227, 234, 242, 265-270]."
Appellant alleges that throughout trial, the prosecutor engaged in misconduct by asking questions upon which there was no evidentiary basis, asking questions with reference to a polygraph examination and repeatedly expressing his personal opinion during closing argument, all of which collectively deprived appellant of his Fourteenth Amendment right to due process.
The test for prosecutorial misconduct is whether the prosecutor's remarks are improper and, if so, whether those comments prejudicially affected the substantial rights of the accused. State v. Lott (1990),51 Ohio St.3d 160, 165. The Supreme Court has held that the touchstone of a due process analysis in a case of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. SeeSmith v. Phillips (1982), 455 U.S. 209, 219.
Appellant cites two instances in support of his allegation that the prosecutor made reference to facts not in evidence while questioning witnesses. First, appellant claims that during cross-examination of witnesses who were present at a meeting which appellant called, the prosecutor suggested that Corrections Officer Burress's recollection of the meeting was most accurate because he had secretly recorded the meeting. Further, appellant submits that since there was no factual basis in the record to support such an assertion, the prosecutor improperly detracted from the credibility of the witnesses called by appellant. At trial, the incident transpired as follows:
 "Q. Okay. You mean you do admit that Burress' remarks to you were, you know, you've got to come forward and tell the truth?
"A. That's what he was saying, yes.
"* * *
 "Q. Okay, all right and was your response to him something along the lines, `look, if we all stick to the story we started with, we can't be in trouble for purgery (sic.)?'
"A. No.
 "Q. Okay and if I suggested to you that maybe that conversation was tape recorded, would you want to change your testimony, would you want to change your answer?
 "A. No, because I don't remember him saying that." (Tr. 234).
Additionally, appellant states that the prosecutor improperly discredited Correction Officer Younkins by suggesting that her testimony had been bought by appellant since he had sent her flowers. On cross-examination of Ms. Younkins, the prosecutor stated:
 "Q. Ms. Younkins, you testified you have no connection with Captain Jackson?
"A. Yes sir.
"Q. He sent you flowers, didn't he?
"A. I don't know who they came from." (Tr. 242).
Appellant's counsel failed to object to these alleged incidents at trial. Due to the fact that defense counsel failed to object to the alleged prosecutorial misconduct, the alleged improprieties are waived, absent plain error. State v. White (1998), 82 Ohio St.3d 16, 22. Plain error will only be held to exist when the outcome of the proceedings clearly would have been different if the misconduct had not occurred.State v. Waddell (1996), 75 Ohio St.3d 163, 166. We find that these inferences could not have impeded the jury's decision, as they dealt with minor issues of credibility and did not carry the weight that appellant wishes this court to assign to them.
Appellant's brief incorporates by reference the identical argument offered under his second assignment of error and suggests that the prosecutor improperly adduced testimony that investigating officers did not institute charges until the alleged victim had submitted to a polygraph exam. In consideration of the recommended disposition of appellant's second assignment of error, appellant's argument that the same conduct amounted to prosecutorial misconduct is not well-taken.
Appellant contends that the prosecutor impermissibly expressed his personal opinion on three different occasions during his closing argument in an attempt to attack the credibility of appellant's evidence. Appellant alleges that the first instance of misconduct occurred when the prosecutor stated that Robert Gaskins had lied so much that he was going to faint while testifying. However, on the record, the prosecutor stated:
 "* * * I want you to think back, think back about how Mr. Gaskins and Mr. McGuire and Ms. Younkins appeared on that witness stand. I thought that Mr. Gaskins was at one point in time going to faint . .
"MR. McNAMARA: Objection, your Honor.
"THE COURT: Let personal opinions be ___ (inaudible).
"MR. McNAMARA: Yes.
"THE COURT: I'll sustain that." (Tr. 265-266).
Secondly, appellant asserts that the prosecutor acted improperly when he told the jury that the defense witnesses were hapless perjurers. The prosecutor stated:
 "* * * Either the defense witnesses are lying or they're telling the truth. Although, I try to give those three hapless purgerors (sic.) an out by letting them testify that it might be possible . . .
"MR. McNAMARA: I object, your Honor.
"THE COURT: Overruled." (Tr. 267).
Finally, appellant submits that the prosecutor conducted himself improperly when he informed the jury that appellee's witnesses accurately reflected what happened and the witnesses called by appellant claimed that they did not see the alleged incident occur rather than risk becoming involved with the incident. The remark in question was as follows:
 "* * * An inmate and two of the witnesses saw it and testified to it and three people conveniently pretended that they didn't see it because they didn't want to get involved.
"MR. McNAMARA: I object, your Honor.
"THE COURT: Overruled." (Tr. 270).
A prosecutor has considerable latitude in closing arguments to draw reasonable inferences from the evidence. State v. Goodwin (1999),84 Ohio St.3d 331, 340. "A prosecutor's use of emotionally charged epithets is not unfair per se, but must be viewed in the context of the entire trial to see if due process has been denied to the defendant."State v. Bowen (Dec. 8, 1999), Columbiana App. No. 96 CO 68, unreported, 1999 WL 1138583 at *14.
In this case, we find that while the prosecutor's remarks did not rise to the level of prosecutorial misconduct, they were at the very least "borderline." We have noted that, "[t]he Supreme Court has allowed subjectivity on the part of the prosecutor and has characterized borderline comments as being `marginally permissible' after consideration of the context and the evidence." State v. Houseman (June 29, 2000), Belmont App. No. 98 BA 4, unreported, 2000 WL 875336 at *3, citing Statev. Clemons (1998), 82 Ohio St.3d 438, 452. Since appellee was trying to prove that appellant did, in fact, assault Buchanan, the prosecutor's comment underscores appellee's theory of the case that appellant's version of what happened was contradicted by the evidence. See Clemons,82 Ohio St.3d at 452. Viewed in the context of the entire trial, it cannot be said that the prosecutor's remarks denied appellant a fair trial.
Accordingly, appellant's third assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
VUKOVICH, J., concurs, WAITE, J., concurs