JOURNAL ENTRY and OPINION
Defendant-appellant Lawrence King, Jr. appeals from his conviction after a jury trial of forcible rape of a minor.
Appellant asserts the trial court's action in refusing to permit him to introduce into evidence portions of the victim's juvenile court records denied him his constitutional right of confrontation. Appellant further asserts his defense counsel were ineffective for their failure to properly obtain those records. This court has examined appellant's assertions in light of the record and finds them to lack merit. Therefore, appellant's conviction and sentence are affirmed.
Appellant's conviction results from his association with the victim's family. The victim, who was born in January 1982, lived with her mother, Barbara Pullem. In 1984, one of Pullem's female friends began dating appellant's brother. Pullem and appellant thereby became acquainted. As a result of their acquaintance, appellant and Pullem began a "platonic"[1]
relationship, since Pullem discouraged appellant's advances of a more sexual nature.
In the summer of 1987, Pullem and the victim moved to a home located on East 111th Street in Cleveland, Ohio. This home was located only "about three miles" from appellant's residence. By this time, appellant had assumed a position of trust in Pullem's family, becoming "like a male role model." Pullem and the victim referred to appellant as the victim's "godfather." He often accompanied them on outings; moreover, Pullem occasionally permitted appellant to take the victim either for "ice cream" or to the park.
One of these occasions occurred in 1988. Appellant, with Pullem's permission, drove the six-year-old victim to the park. Just prior to the time for them to leave, while playing in the park's "sandbox," the victim covered herself with sand as if she were at the beach. Appellant suggested the two of them "get some ice cream." He thereafter drove the victim to his home, where he indicated she should clean herself. Appellant turned on the water faucet in the bathtub, filled it, and provided "some bubbles" to her for the purpose.
The victim removed her clothing and began to wash herself in the bathtub. Appellant, at that time, "knocked on the door" and stated he had to use the toilet. When he entered, he observed the victim, indicated sand remained on portions of her body, and began to wash her himself. Appellant eventually told the victim to exit the bathtub in order for him to do a more thorough cleansing.
After "washing" the victim's chest and her "private" area, appellant ordered her to "hold" his penis while he urinated, indicating that if any of the liquid missed the toilet, she "would be in trouble." Thereafter, as a punishment for the victim's failure in performing that task to his specification, appellant made the victim lie on the floor while he began "spanking" her by "rubbing" his penis against the victim's "vagina hole." Appellant ejaculated, then permitted the victim to clean herself before driving her home.
This incident marked the beginning of appellant's sexual relationship with the victim, which progressed to cunnilingus, fellatio and, ultimately, in 1994, when the victim was twelve, appellant's complete penetration by force of the victim's vagina.
Appellant visited Pullem's house frequently; therefore, he often was alone with the victim while Pullem worked outside the home. Pullem believed appellant was helping the victim with her school "homework." Appellant told the victim that she need not inform her mother of the sexual activities; he indicated Pullem already was aware. Thus, the victim believed her mother condoned the humiliation she suffered. The relationship between mother and daughter, therefore, deteriorated as the years passed.
In 1995, a three-year intimate relationship between appellant and Pullem's sister ended. At approximately the same time, appellant's new girlfriend gave birth to appellant's daughter. Appellant's visits to Pullem's house consequently decreased in frequency.
In May 1997, Pullem moved her family[2] to a new location in East Cleveland. Although Pullem's new home was over ten miles distant from appellant's residence, appellant "started coming around again." Appellant indicated to the victim he wanted to rekindle their sexual relationship. When the victim reacted negatively, he indicated her refusal would cause him to turn his sexual attentions to her five-year-old sister.
Pullem's difficulties with the victim increased at this juncture. The victim's disrespectful attitude toward her and unannounced absences from home led Pullem to seek help from government agencies in her efforts to discipline her oldest daughter.
The victim often retreated from her own home to the home of one of her girlfriends. In the summer of 1998, the girlfriend's mother finally was able to extract from the victim in confidence what had occurred between her and appellant. The girlfriend's mother kept that confidence until September, 1998.
At that time, the victim's act of again "running away" from her home prompted the girlfriend's mother to request Pullem personally to retrieve the victim. Upon Pullem's arrival, she first received the information of appellant's sexual activities with her oldest daughter from the girlfriend's mother. The victim later that day reluctantly confirmed this information. Soon thereafter, Pullem notified government authorities.
On October 19, 1998 the Cuyahoga County Grand Jury issued a nine-count indictment against appellant. Count one alleged appellant had committed rape upon the victim in violation of R.C. 2907.02(A)(1)(b) and (A)(2) in 1994. Count two alleged appellant had commited rape upon the victim in violation of R.C 2907.02(A)(2) in 1997. Counts three through nine alleged that from "1988 to 1994," appellant had committed rape upon the victim in violation of R.C. 2907.02(A)(1)(b) and (A)(2). Appellant pleaded not guilty to the indictment and retained counsel to represent him. After some months, however, appellant dismissed his original attorney and retained new counsel.
Appellant's newly-retained counsel subsequently filed several discovery motions; some of these motions sought the disclosure of various aspects of the victim's medical history. While the parties pursued discovery, the trial court set a trial date of June 15, 1999.
On that date, prior to the voir dire of prospective members of the jury, appellant's counsel notified the trial court of their intention to introduce certain evidence. Counsel averred that the victim's status as a juvenile court probationer at the time she first came forward with her accusations against appellant had relevance to the defense. Counsel theorized that the victim's destruction of a court-ordered monitoring device "was, in part, the impetus for lodging this [rape] allegation." The trial court indicated any defense motion that sought to introduce that information would be denied.
Nevertheless, that same day, at the conclusion of the voir dire process, the trial court discovered defense counsel had filed with the clerk's office a "memorandum of law" in support of their contention the evidence should be admitted. In conjunction therewith, counsel also had filed a "proffer of * * * incident reports and juvenile court records." Attached to this were copies of confidential documents regarding the victim that apparently previously had been filed with the juvenile court.[3]
After a consideration of this matter on the record, the trial court granted the prosecutor's request for a mistrial. The trial court stated as the basis for its decision two factors: (1) defense counsels' failure to obtain the confidential documents with the juvenile court's consent; and (2) defense counsels' questions of the prospective jurors, based upon their improper possession of those documents.
At a subsequent hearing, the trial court determined defense counsel obtained the documents by means of a subpoena directed to a juvenile-court-supervised children's home. Defense counsel, at that time, stated they would follow proper statutory procedure in order to again raise the issue of the admissibility into evidence of the victim's juvenile court records.[4] The trial court set a new trial date for August 3, 1999.
On August 3, 1999 the voir dire process to select a new jury began. At its conclusion, defense counsel renewed their motion seeking to admit the victim's juvenile court record into evidence. Defense counsel stated they had "resubpoenaed" the documents, this time directing a subpoena to the juvenile court, itself.
The prosecutor, at that juncture of the proceedings, pointed out defense counsel had employed yet another procedure contrary to the proper statutory method as outlined during the previous hearings. One of appellant's attorneys thereupon stated the following:
 Judge, with all due respect to the Court and to the requirements of the statutory scheme, I'm simply suggesting to the Court that what [co-counsel] and I did was in conformance to what we believed the Court was requesting us to do the last time.
 Now, I'm not and I want the record to be clear. I'll always accept responsibility for my own actions. Let's assume at this stage of the proceedings that [co-counsel] and I should have known better and we should have followed the statutory scheme. Then I want the record to reflect that I'm indicating right now that [co-counsel] and I have been ineffective pursuant to the Sixth Amendment of the United States Constitution. My client is getting ineffective assistance of counsel. We can not properly defend this case without these records. We are damaging his ability to defend the case. If he is convicted, then it is because of [co-counsel] and [me] * * *.
Despite this rhetoric, however, both of appellant's attorneys declined to remove themselves from appellant's case. The trial court, therefore, summarized its dilemma as follows:
 You're trying to get your way and so to get your way you said, "Okay, then let us do it our way or we're going to be ineffective. So, therefore, no matter what you do, we're going to take when we take the case to the Court of Appeals, it's going to be reversed. Because if you don't let us do it, we're going to stand and say we're ineffective. And if you do let us to it, it's going to be contrary to the statute. So any way you go, Judge, you are at a loss."
 Now, you've had, you know, a continuance of a month to do all the preparation that you could and all the preparation that's necessary on this case. You're both seasoned lawyers. You're in this building every single day. You know how to practice criminal law. So now you place the Court and the Prosecutor's Office in a position where if we proceed [with trial], then you've indicated you're ineffective. And if we proceed with letting you do it your way, then it's contary to the statute. * * *
After requesting of appellant whether he wished to dismiss counsel and receiving a negative response, the trial court determined defense counsels' actions in twice seeking to obtain confidential documents by improper means constituted "a trial tactic." The trial court repeated its decision concerning the inadmissibility of any evidence of the victim's juvenile court probationary status. Appellant's case then proceeded to trial.
The state presented the testimony of the victim, her mother, and the Cleveland police detective who had conducted the investigation of the case. Appellant elected to present no evidence.
Subsequently, the jury found appellant not guilty of counts one, two and four through nine, but guilty of count three. The trial court thereupon sentenced appellant to a term of life imprisonment.
Appellant has filed a timely appeal of his conviction. He presents two assignments of error for review.
Appellant's first assignment of error states:
 THE APPELLANT WAS DENIED DUE PROCESS AND THE RIGHT TO CONFRONT AND CROSS-EXAMINE HIS ACCUSER UNDER THE SIXTH AMENDMENT OF THE U.S.
 CONSTITUTION AND ART. I, SEC. 10 OF THE OHIO CONSTITUTION WHEN THE COURT DENIED HIM THE RIGHT TO CROSS-EXAMINE HIS ACCUSER CONCERNING HER JUVENILE COURT RECORD IN VIOLATION OF DAVIS V. ALASKA (1974), 415 U.S. 308.
Appellant argues the trial court compromised his constitutional rights in refusing to permit him to introduce into evidence the fact that at the time the victim brought the allegations of rape against appellant, she was a juvenile court probationer. Appellant asserts this fact constituted a motive for the victim to lie in order "to deflect attention" from her own misdeeds. Appellant's argument is unpersuasive.
This court faced this same argument in State v. Cole (Dec. 20, 1995), Cuyahoga App. No. 68546, unreported, observing as follows:
 R.C. 2151.358(H) sets forth a general rule of nondisclosure of juvenile proceedings and provides in pertinent part that "* * * [t]he disposition of a child under the judgment rendered or any evidence given in court is not admissible as evidence against the child in any other case or proceeding in any other court * * *."
 The Confrontation Clause, however, secures the right of cross-examination, Davis v. Alaska (1974), 415 U.S. 308, 315, * * *.
 In Davis, supra, the Supreme Court weighed the competing interests of anonymity of juvenile proceedings and thorough cross-examination. In that case, the defendant was accused of [burglary]. A key witness for the state, Richard Green, identified the defendant as one of the two men he had observed near his family's house following the burglary. * * * The defendant's attorney attempted to cross-examine Green for having been on probation as the result of a juvenile delinquency adjudication for burglary. Counsel endeavored to establish that Green's identification of the defendant was suspect because it was (1) made to shift suspicion away from himself and (2) the result of undue pressure from the police due to fear of possible probation revocation. Counsel indicated, however, that Green's record would be revealed only as necessary to probe for bias and prejudice "and not generally to call Green's good character into question." Id. at 1108. The trial court prohibited the inquiry pursuant to a state law which protects the anonymity of juvenile offenders, and the defendant was subsequently convicted.
The Supreme Court reversed the defendant's conviction and stated:
 * * * the jurors were entitled to have the benefit of the defense theory before them so they could make an informed judgment as to the weight to place on Green's testimony. * * * The accuracy and truthfulness of Green's testimony were key elements in the state's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, * * * as well as of Green's possible concern that he might be a suspect in the investigation.
 * * * While counsel was permitted to ask Green whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. * * *
 We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender. Cf., In re Gault, 387 U.S. 1, 25, 87 S.Ct. 1428, 1442, 18 L.Ed.2d 527 (1967). Here, however, petitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony either was not to be believed in his identification of petitioner or at least very carefully considered in that light. * * *
* * *
 In Ohio, Davis, supra, has been applied to allow cross-examination of a witness with his or her juvenile records where the defense presents "some plausible showing" that the records would be used for the specific purpose of showing a witness's potential bias and not merely to discredit the general character of the witness. State v. Lukens (1990), 66 Ohio App.3d 794, 802-803; State v. Pirman (1994), 94 Ohio App.3d 203., 210; see, also, State v. Willman (1991), 77 Ohio App.3d 344, 346; State v. Bayless (Mar 31, 1995), Crawford App. No. 3-94-15, unreported.
(Emphasis added.)
Upon a review of the facts in Cole, this court concluded the sole purpose of the defense's attempt to introduce the evidence was nothing more "than a general attack on [the victim's] character for truthfulness." The trial court's decision to exclude the evidence, therefore, was affirmed.
Similarly, in this case, the victim's supervision by the juvenile court was irrelevant to appellant's defense. It was based solely on her unruly behavior in her dealings with her mother rather than on either any prior false accusations against others or upon her improper sexual activities. Cf., State v. Cox (1975), 42 Ohio St.2d 200; State v. Lukens (1990),66 Ohio App.3d 794.
Moreover, it was clear that the victim's initial disclosure of appellant's criminal activities with her did not coincide with her violation of her probationary status; rather, her disclosure to her girlfriend's mother pre-dated that occurrence by many months. Indeed, the defense efforts to introduce the evidence, if successful, actually might have compromised appellant's case since it appears the victim became involved with the juvenile court only shortly after appellant began "coming around again" to her mother's home.
The facts in this case additionally demonstrate the inapplicability of Davis v. Alaska (1974), 415 U.S. 308 in that the victim's accusations did not serve to deflect attention from her; rather, they focused attention upon her. Bringing the allegations against appellant forced the victim not only to expose one of the most excruciating experiences that can be endured by an individual, but also then to be subjected to detailed examination of it before many others. Clearly, a distinction must be made between an accusation contemporaneous with the witness' own presence at the scene of a crime, as in Davis, and an accusation concerning traumatic events that occurred years before that bear so little relationship to the witness' supervision by a juvenile court.
Finally, it is apparent from the trial transcript that appellant's right to confront the witness-victim did not suffer from the exclusion of the evidence he sought to admit. The victim was subjected to vigorous and lengthy cross-examination on many points touching on her credibility, including her actions in "running away" from her home. State v. Lukens, supra.
For the foregoing reasons, appellant's first assignment of error is overruled. State v. Pirman (1994), 94 Ohio App.3d 203; State v. Willman (1991), 77 Ohio App.3d 344.
Appellant's second assignment of error states:
 APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED TO HIM BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS A RESULT OF TRIAL COUNSEL'S (SIC) FAILURE TO UTILIZE THE PROPER PROCEDURE IN SUBPOENAING THE ALLEGED VICTIM'S JUVENILE COURT AND PROBATION RECORDS.
Appellant argues his trial counsel were ineffective for their failure to secure by proper statutory means the juvenile court records pertaining to the victim.
First, the disposition of appellant's first assignment of error renders appellant's argument moot: since the evidence was inadmissible, the methods counsel employed in their attempts to present it to the trial court are irrelevant.
Second, a review of the facts of this case demonstrates appellant cannot meet the test to show ineffective assistance of counsel as set forth in State v. Bradley (1989), 42 Ohio St.3d 136. Counsels' efforts on appellant's behalf evince high degrees of both sophistication and zeal. The trial court's ultimate conclusion with regard to the evidence, viz., counsels' manner of proceeding merely was a trial tactic designed to force the court into permitting the evidence to be introduced, is well supported in the record.
Moreover, defense counsel represented appellant so capably that the jury found appellant not guilty of eight of the nine counts of the indictment.
Appellant's second assignment of error, therefore, also is overruled.
Appellant's conviction and sentence are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ KENNETH A. ROCCO, J.
ANN DYKE, A.J. and ANNE L. KILBANE, J. CONCURS IN JUDGMENT ONLY (See separate Opinion)
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] Her family by that time included another daughter born in 1992.
[3] These documents bore dates from May to October, 1998.
[4] See R.C. 2151.14(D).