OPINION
Defendant-appellant Paul Demoss, Sr. appeals from his conviction for Rape, Felonious Assault and Aggravated Burglary. He contends that the trial court was biased against him and also that it made erroneous, prejudicial evidentiary rulings. He contends that he was prejudiced by prosecutorial misconduct and the ineffectiveness of his trial counsel. Demoss also contends that his convictions were not supported by the evidence. Finally, he contends that the cumulative effect of all the errors made at trial deprived him of a fair trial.
We conclude that the trial court did not exhibit bias in either its comments or its evidentiary rulings; that any error in its evidentiary rulings was harmless; that the prosecutor did not act improperly; that trial counsel was not ineffective; that the State presented sufficient evidence to support the convictions; that the convictions are not against the manifest weight of the evidence; and that any claim of cumulative error is without merit. Accordingly, the judgment of the trial court isAffirmed.
 I
On June 24, 2000, at approximately 1:30 a.m., Tangie Demoss went to the Urbana Police Department to report that her ex-husband, Paul Demoss, had harassed her while she was in a bar. At that time, Demoss was serving a community control sentence. A condition of that sentence required Demoss to have no contact with Tangie. The police were unable to locate Demoss.
Around 2:00 a.m., Tangie arrived at her home. Her thirteen-year-old daughter, Tiffany, was already in bed. Her son, Paul Demoss, Jr., had gone to a friend's house to stay the night. Some time later, Demoss began banging on the front door, which was made of steel. Tangie yelled at Tiffany to call the police, but the phones did not work.[1] Demoss repeatedly kicked the door, causing damage to the outer frame. When he could not gain access through the door, he went to the opened front window, tore out the screen and entered the house. At that point, Demoss began attacking Tangie.
During the attack, Demoss repeatedly told Tangie, "you're going to die tonight." He choked her with such force that she briefly passed out. He pulled her across the kitchen floor by her hair.
Tiffany then grabbed a butcher knife from the kitchen and told her father to leave Tangie alone or she would stab him. Demoss grabbed Tiffany's hand holding the knife and said "let's kill mommy." Tiffany took the knife and ran out the door. As she left, Tiffany heard Demoss say that Tangie would be dead by the time she returned. She also saw Demoss begin to pull Tangie's pants down. Demoss held Tangie down with his legs, ripped her panties, flipped her over on her stomach, and proceeded to have anal intercourse with her.
When Tiffany fled the house, she ran to the home where her brother was spending the night. She woke her brother and his friends with loud screaming and knocking on the door. When Paul, Jr., and his friends opened the door, Tiffany yelled, "Dad is trying to kill Mom." The boys then raced to Tangie's home. When they arrived, they found Demoss and Tangie wrestling in a neighbor's yard. Demoss had his arm around Tangie's neck. He told the boys not to come any closer or he would break Tangie's neck. One of Paul, Jr.'s friends, Tim Roth, grabbed Demoss and hit him. When Demoss stood up, he still had hold of Tangie by her hair. Roth then pushed Demoss, and Tangie was able to run to a neighbor's house where she called 911. Demoss ran away. The police arrived on the scene and took statements. EMS was called because Tangie exhibited injuries. She was taken to the hospital where she was treated.
The police later arrested Demoss at his parents home. He was interviewed by his probation officer. Demoss admitted that the blood found on the walls of the home was Tangie's and that he had hit her and pushed her into the door. Demoss was charged with Attempted Murder, Rape and Aggravated Burglary.
Trial was held in January, 2001. Tangie was called by the defense. She testified that Demoss broke into the home and assaulted her, but that she did not feel that he had tried to kill her. She also denied that she was raped, instead claiming that any sexual intercourse with Demoss was consensual. The assault was corroborated by Tiffany, Paul, Jr., Roth, and the other boys present at the scene. The jury found Demoss guilty of Rape and Aggravated Burglary. On the Attempted Murder charge, the jury found him guilty of the lesser-included offense of Felonious Assault. Subsequently, the jury, following a sexual predator hearing, also found him to be a sexually violent predator. Demoss was sentenced accordingly. From this conviction and sentence, Demoss appeals.
 II
DeMoss's First Assignment of Error is as follows:
 THE TRIAL COURT THROUGH IT'S EVIDENTIARY RULINGS AND DEMEANOR DURING TRIAL PREJUDICED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.
Demoss's argument in this assignment of error is not entirely clear. In part, he appears to argue that the trial court exhibited bias against him both in remarks made during trial and by ruling against him on evidentiary issues. However, in reviewing his argument, it appears possible that he also intends to argue that the trial court abused its discretion in reaching its evidentiary decisions. The State contends that the issue of whether the trial court abused its discretion in its evidentiary rulings is not properly raised by Demoss. However, we will address both arguments in the interest of justice.
We begin with the claim that the trial court's statements made during trial exhibited bias. Demoss contends that the following comments made by the trial court demonstrate bias: (1) "All of these charges are crimes that have taken place on the dates that I mentioned"; (2) "Do you have a question?"; and (3) "Is there a question counsel?"
The right of an accused to be tried by a fair and impartial judge is a basic right of due process. In re Murchison (1955), 349 U.S. 133, 136. A judge has an ethical obligation to conduct himself or herself in a courteous and dignified manner that does not convey the appearance of bias or prejudice toward litigants or their attorneys. See Canon 3(B)(4) and (5) of the Code of Judicial Conduct.
All of the comments noted by Demoss occurred during voir dire. The trial court did make a statement that the crimes "have taken place." However, immediately prior to that statement, the trial court said that the "State has brought three charges against the defendant * * * * [which] relate to conduct that the State says took place on or about the 23rd of and 24th days of June * * *." The trial court further told the jury that the State was required to prove every element of the charges against Demoss. Since this is the only statement in the entire transcript in which the trial judge appears to be assuming that the offenses occurred, and given that it appears to be an obvious misspeaking, contradicted by all of the trial court's proper instructions on the presumption of innocence and the burden of proof, we conclude that this statement fails to demonstrate bias on the part of the trial judge.
The two instances when the trial court asked trial counsel if he had a question also occurred during voir dire. A review of those passages does not indicate bias, but rather indicates to us that the trial court was attempting to control the voir dire process when counsel began making statements rather than asking questions. We have reviewed the entire transcript, which is more than 850 pages long, and do not conclude that the few comments noted by Demoss demonstrate that the trial court exhibited bias toward Demoss or deprived him of a fair trial.
We next turn to the issue of whether the trial court abused its discretion in making evidentiary rulings. Demoss contends that the trial court erred by: (1) permitting the State to play the recordings of Tangie's call to the 911 dispatcher; (2) not permitting him to inquire into the juvenile record of a witness; (3) permitting the State to introduce evidence of his prior bad acts; (4) permitting the State to introduce Tangie's grand jury testimony; and (5) failing to instruct the jury on his rights as a co-tenant.
We begin with the 911 tapes, and note that two recordings of Tangie's call to 911 were played at trial. The first tape is a recording of Tangie's 911 call to the Champaign County Sheriff's Department; the second tape is a recording of the same call after the Sheriff's Department transferred Tangie's call to the Urbana City Police Department.[2] The second tape also captures communications between the Urbana dispatcher and officers, as well as the paramedics and the hospital where Tangie was treated. The tapes were qualified and admitted as business records. Demoss did not object to the first tape, but did to the second tape. On appeal, Demoss contends that it was error to admit the tapes via the business records exception, but acknowledges that they would have been properly admitted as an excited utterance. However, he contends that no foundation was laid for admission of the tapes under the excited utterance rule.
The tapes of the 911 call were received in evidence at the trial, and we have listened to them. It is clear that Tangie was agitated and upset, and that she was claiming that Demoss had broken into her house and tried to kill her. She spontaneously declared Demoss had choked and raped her without having to be prompted. Furthermore, although it is clear that the State did not attempt to have the tapes admitted under the excited utterance rule, a proper foundation was subsequently laid therefor during the State's cross-examination of Tangie. During her testimony, Tangie admitted that it was her voice on the tapes, and that she made the calls immediately after the attack, thinking she was in an emergency situation. She also testified that she was afraid and hysterical during the calls.
In our view, while the trial court improperly admitted the statements made to the 911 dispatchers on the tapes as business records, it is clear that the tapes could properly have been admitted under the excited utterance exception to the hearsay rule. Therefore, any error in admitting the two tapes was harmless.
We next turn to the claim that the trial court erred by restricting Demoss's cross-examination of one of the witnesses. At trial, one of the witnesses called by the State was asked, on direct examination, how he remembered the date that he first met Paul Demoss, Jr. The witness answered, "Because that's the day I got out of jail." Demoss attempted to question the witness about his jail term, but the State entered an objection thereto that was sustained by the court. Demoss contends that by denying him the right to ask the witness why he was in jail, the trial court violated his Sixth Amendment right to confront witnesses.
"The Sixth Amendment to the United States Constitution provides in part that `[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' This right of confrontation is considered to be a fundamental right, applicable to the states under the Due Process Clause of theFourteenth Amendment." State v. Lukens (1990), 66 Ohio App.3d 794, 801. However, "[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. * * *"Id., citation omitted.
It is undisputed that the reason the witness had been "in jail" was an adjudication of juvenile delinquency. Evid.R. 609(D) and R.C. 2151.358
prohibit the use of a juvenile adjudication for purposes of general impeachment of a witness's credibility. State v. Lukens, supra, at 803. However, other valid uses may allow the introduction of the evidence. But a defendant who wishes to cross-examine a witness with juvenile records must "present some plausible showing" of a proper purpose and use, which would not include an attempt merely to impeach the witness's credibility. Id.
Nothing in the record in the case before us suggests that the witness's juvenile records were sought to be used other than for the purpose of impeaching his credibility. Demoss has not offered, either at trial or on appeal, any basis for the question other than the impermissible purpose of impeaching the credibility of the witness. Further, there is nothing in the record to suggest that the juvenile records would have any bearing on Demoss's defense. Therefore, we cannot say that the trial court erred by restricting Demoss's cross-examination of the witness.
Demoss next contends that the trial court erred by permitting the State to introduce evidence of prior bad acts. Specifically, he claims that the State introduced evidence of the conditions of his probation with regard to a prior conviction as well as evidence of the "actual convictions" during the State's cross-examination of Tangie. While "[e]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's character as to criminal propensity, "[i]t may, however, be admissible [to show] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). The standard for determining the admissibility of such evidence is strict. State v. McGill (Dec. 8, 2000), Greene App. No. 99CA25, unreported. However, "the list of possible bases for offering an extrinsic act should not be seen as a list of exceptions to the Rule, but rather as a suggestive, nonexhaustive catalogue of bases which do not violate the exclusionary principle of [the Rule]." Weissenberger's Ohio Evidence § 404.23. "The ultimate issue is a determination of the way in which the extrinsic act is relevant, because the Rule specifically authorizes the use of extrinsic acts where the evidence is offered to prove a relevant fact other than propensity and conforming conduct." Id.
In this case, the State introduced evidence of Demoss's prior conviction for Sexual Battery of Tangie, for which he had been placed on community control. The State showed that, as part of the conditions of his supervision, Demoss was prohibited from having any contact with Tangie and his children. The State's purpose for introducing this evidence was to establish that Demoss had no right to be upon Tangie's premises, which was necessary to prove the trespass element of the offense of Aggravated Burglary.
This evidence was used to establish an element of the charged offense by rebutting Demoss's claim that because he was a co-tenant with Tangie, he had a right to be upon the property. As the trial court noted, the fact that one of the conditions of Demoss's community control sanction was that he was not allowed near Tangie was essential to the State's proof of the trespass element of Aggravated Burglary. The trial court carefully limited the scope of this evidence to the existence of the community control sanction. The claim that the actual conviction was admitted into evidence at the guilt phase of the trial is not supported by the record. Although a knowledgeable juror might have inferred therefrom that Demoss must have been convicted of some offense, that was not explicitly developed, and the nature of the offense was not in evidence. We conclude that this evidence was admitted for a purpose other than to establish the impermissible inference that because Demoss committed a criminal act on a prior occasion, he probably committed the charged offense. By limiting the scope of the evidence as it did, the trial court appropriately balanced the probative value of this evidence with its prejudicial tendency.
The next claim made by Demoss is that the trial court erred by permitting the State to introduce Tangie's grand jury testimony. Apparently his complaint is based upon the fact that he is unaware whether the testimony contains any evidence of prior bad acts.
Tangie's grand jury testimony was used by the State during its cross-examination of Tangie in order to impeach her direct testimony that she consented to having sexual intercourse with Demoss. Use of grand jury testimony to impeach subsequent contradictory testimony of a witness is permissible. See State v. Hopfer (1996), 112 Ohio App.3d 521, disc. appeal denied 77 Ohio St.3d 1488. We have reviewed the testimony and note that it does not contain any reference to any prior bad acts by Demoss. Therefore, we cannot say that the trial court abused its discretion by permitting the State to introduce the testimony.
Finally, Demoss contends that the trial court erred by failing to instruct the jury on the rights of a co-tenant. Specifically, he argues that there was conflicting evidence whether he was Tangie's co-tenant in the home, and that he was therefore entitled to the instruction. He further argues that if the jury found him to be a co-tenant, the State would not have been able to prove that he trespassed in the home.
Demoss has failed to provide any citation to the record supporting his claim that there was evidence that he was a co-tenant in the home, and we were not able to find any such evidence during our review of the transcript. Moreover, the evidence we did note concerning the issue of custody and control of the home indicated that Demoss was not a co-tenant. Therefore, we conclude that the trial court did not err in refusing to instruct the jury on Demoss's rights as a co-tenant.
Given that the admission of the 911 tapes as business records were the only erroneous rulings made by the trial court, and that those rulings constituted harmless error, we cannot say that these rulings demonstrate bias on the part of the trial judge.
Demoss's First Assignment of Error is overruled.
 III
Demoss's Second Assignment of Error states as follows:
 THE STATE COMMITTED NUMEROUS ACTS OF PROSECUTORIAL MISCONDUCT WHICH PREJUDICED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.
Demoss contends that the record demonstrates "numerous acts" of prosecutorial misconduct; however, he only identifies three. Specifically, he contends that the prosecutor acted improperly by: (1) hinting about Demoss's prior convictions in its reference to the pendency of community control sanctions; (2) failing to give notice of the intent to use Tangie's grand jury testimony; and (3) failing to give notice of rebuttal witnesses.
The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. State v. Jackson (2001),92 Ohio St.3d 436, 441-442.
We concluded in Part II, above, that the trial court did not err in permitting the State to introduce evidence of Demoss's prior bad acts. For the same reason, we conclude that the prosecutor did not act improperly or deprive Demoss of a fair trial by offering that evidence.
We next turn to the claim that the prosecutor failed to give proper notice of its intent to use Tangie's grand jury testimony and rebuttal witnesses. During her testimony at trial, Tangie contradicted her grand jury testimony and recanted her allegations against Demoss. Since Tangie was called by, and testified in favor of, the defense, the State was entitled to impeach her. Until the time that Tangie actually gave contradictory testimony, the State could not know whether it would be required to use her prior testimony and rebuttal witnesses to impeach her. However, it appears that as soon as the State was aware that Tangie was recanting her allegations, so that the State would need to use the grand jury testimony and rebuttal witnesses, it gave notice to the trial court and to Demoss. Although he objected, Demoss did not seek a continuance of the trial. Moreover, from our review of the record, Demoss's counsel was given the opportunity to review the grand jury testimony, and the opportunity to conduct a vigorous cross-examination of the rebuttal witnesses. We cannot say that the failure to give notice of the grand jury testimony and rebuttal witnesses prior to the notice that they would be needed constitutes prosecutorial misconduct.
Demoss's Second Assignment of Error is overruled.
 IV
Demoss's Third Assignment of Error provides as follows:
 DEFENSE COUNSEL'S PERFORMANCE WAS INEFFECTIVE AND HIS CUMULATIVE ERRORS PREJUDICED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.
In this assignment of error, Demoss asserts that his trial counsel provided ineffective assistance of counsel. Specifically, he cites the following as grounds for this claim: (1) counsel stated that his client was presumed guilty; (2) counsel failed to seek suppression of his statements; (3) counsel did not have the correct case law on hand to advise the court about the admissibility of the 911 tapes; (4) counsel was not aware that the State would use Tangie's grand jury testimony to impeach her; (5) counsel did not object to some of the trial court's comments; (6) counsel failed to make a Crim.R. 29 motion for acquittal; (7) counsel called Tangie as a witness; and (8) counsel failed to obtain a continuance prior to the sexual predator hearing.
In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court set the standard for determining whether a defendant has been provided with ineffective assistance of counsel. This standard, subsequently followed in State v. Bradley (1989), 42 Ohio St.3d 136, requires that a defendant satisfy a two-part test. First, the defendant must demonstrate that his trial counsel's representation was deficient by showing that counsel's performance fell below an objective standard of reasonable representation. Id., at 142. Second, the defendant must show that his trial counsel's deficient representation resulted in prejudice to the defendant. Id. To demonstrate prejudice, the defendant must show "a reasonable probability that, were it not for counsel's unprofessional errors, the result of the trial would have been different." Id.
The United States Supreme Court has stated that a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Strickland, supra, at 689. This court has stated that under Ohio law, a properly licensed attorney is presumed competent. State v. Estes (May 31, 1996), Montgomery County App. No. 15419, following, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,301. Further, we have held that "counsel's performance will not be deemed ineffective unless and until" the defendant has met the requirements of Strickland and Bradley. Estes, at 3.
The statement made by counsel during voir dire that Demoss was "presumed guilty until proven guilty" was clearly a misstatement by counsel. A review of counsel's entire colloquy with the jury indicates that he stated the correct burden during both his opening statement and closing argument. Also, the trial court reiterated the burden during the course of trial. Therefore, we cannot find that this one misstatement rises to the level of ineffective assistance of counsel.
Demoss also claims that "defense counsel missed the issue on the statement given by [him] to his probation officer" for purposes of the suppression hearing. He claims that he invoked his right to counsel, but was interrogated anyway without the presence of an attorney. We find no support in the record for this claim, and therefore, find that counsel's performance was not deficient for failing to raise this issue.
Demoss also contends that counsel was ineffective because he "knew that the State was going to use the 911 tapes yet he did not have the correct case law on hand so that he could properly advise the court as to the correct ruling." As noted above, the tapes were admissible; therefore, any argument by counsel against their admission would have been for naught. Even if counsel's performance is deemed deficient, it did not cause prejudice.
Next, Demoss contends that counsel was "inexperienced, inept, inexcusable and ineffective" because he "had no idea that the state would use Tangie Demoss's grand jury testimony to impeach her credibility." This comment is unsupported by the record. Furthermore, even though the complaining witness could be impeached by her grand jury testimony, her testimony in support of Demoss could be expected to have a powerful impact on the jury. Surely, her corroboration of at least part of Demoss's testimony, that the sexual intercourse was consensual, was better than Demoss's unsupported testimony, even though it opened the door to impeaching her with her grand jury testimony. At the very least, this was a matter of trial strategy upon which reasonable professional opinions may differ.
The next claim raised by Demoss is that trial counsel was ineffective for failing to object to "some of the judge's comments during voir dire
and trial" and by failing "to make his Rule 29 motion immediately after the presentation of the State's case." We first note that Demoss fails to specify what comments he believes trial counsel should have objected to during trial. To the extent he is referring to the comments addressed in Part II, above, we find his argument without merit for the reasons cited. To the extent he refers to some other comments, we note that we cannot make a determination of the issue without a citation to the comments. Because of the obvious possibility of offending the trial judge, experienced trial counsel will not lightly object to comments made by a trial judge, but will err on the side of caution in these matters.
With regard to the failure to make a Crim.R. 29 motion for acquittal, we note that, although not made right after the close of the State's case, the motion was made and argued. The motion was subsequently overruled by the court, which found that there was sufficient evidence to proceed with the case. From our review of the record, we conclude that Demoss would not have been entitled to a judgment of acquittal at the close of the State's case. Therefore, he was not prejudiced by his trial counsel's failure to have made the motion.
Demoss next contends that his trial counsel was deficient because he called Tangie to testify. He claims that "almost all of the damaging evidence came in against [him] during the cross-examination of Tangie Demoss." We find this claim lacks merit. The State presented evidence against Demoss that was sufficient and upon which a juror could reasonably have found him guilty. Trial counsel was able to call Tangie who testified that Demoss did not intend to kill her and that he did not rape her. In fact, from our review of the transcript, trial counsel presented a picture of a woman who was angry at her ex-husband because he harassed her at the bar, and who, thus, exaggerated her claims against him. On the stand, it appeared that Tangie regretted losing her temper and making exaggerated claims against him. We find that this was reasonable trial strategy, and note that in fact, the jury found Demoss not guilty of the charged offense of Attempted Murder, but guilty of the lesser-included offense of Felonious Assault.
Finally, Demoss contends that trial counsel was deficient because he failed to seek a continuance of the sexual predator hearing, but instead "continued forward into late evening with an exhausted jury." The record shows that the entire case was concluded by, at the latest, 9:35 p.m., and that the jury had been excused shortly before that time. There is no support in the record for the claim that the jury was exhausted, or that the jurors were incapable of making a reasonable determination with regard to Demoss's sexual predator status at that time. This was a jury that had not blindly convicted Demoss as charged, but had found him not guilty of the charged offense of Attempted Murder; thus, it would not appear that the jury was predisposed to make the sexually violent predator finding against Demoss. To have continued the case until the next morning might have upset the jury, which had already been sitting in this case for three days. We cannot say that trial counsel was deficient for failing to ask for a continuance.
From our review of the record, we find that Demoss has failed to demonstrate that trial counsel was ineffective. Therefore, his Third Assignment of Error is overruled.
 V
Demoss's Fourth Assignment of Error is as follows:
 THE CONVICTION OF THE DEFENDANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS BASED ON INSUFFICIENT EVIDENCE.
Demoss contends that the State did not present sufficient evidence to support his convictions for Aggravated Burglary and Rape, and that both are against the manifest weight of the evidence. He does not challenge his conviction for Felonious Assault.
In determining whether the evidence presented at trial is sufficient to support a conviction, a reviewing court must decide whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
Demoss contends that the State failed to present sufficient evidence to support his conviction for Aggravated Burglary. The offense of Aggravated Burglary is defined in R.C. 2911.11(A)(1), which states, in pertinent part:
 (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]
R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(3) defines "physical harm to persons" as any injury regardless of its gravity or duration. Finally, trespass occurs when a person, without privilege to do so, knowingly enters on the premises of another. State v. O'Neal (2000), 87 Ohio St.3d 402, 408.
Thus, the State was required to provide evidence that Demoss trespassed by force, while Tangie Demoss was present in the house, with the purpose to commit a criminal offense. The State was also required to provide evidence that Demoss inflicted physical harm upon Tangie Demoss.
Here, the State produced evidence showing that the door to the house was shut and locked when Demoss attempted to open it. The evidence shows that Demoss actually did damage to the metal door. The State also showed that Demoss then entered the house by tearing out a window screen and crawling through the window. This court has held that "the effort necessary to open a door, locked or unlocked, is sufficient to satisfy the element of `force' necessary to prove burglary." State v. Ford (May 17, 1996), Montgomery App. No. 15374, unreported, citations omitted. Thus, the force necessary to rip out a window screen is also sufficient to satisfy the force element.
Demoss argues that he was not trespassing because his name was on the lease of the home, he had some clothes there, and he occasionally slept there. However, the evidence showed that Demoss and Tangie had been divorced for at least a year at the time of the attack, and were not living as husband and wife. Also, Paul Demoss, Jr. testified that Demoss had not lived with him, his mother or sister for approximately two years. While Tangie Demoss testified that Demoss sometimes stayed at the house overnight, she did not testify that he resided there, or was anything more than an invited guest on certain occasions. The evidence also shows that Tangie did not invite Demoss in on the night of the attack, and that she told him to go away. The evidence also shows that Tangie, not Demoss, paid the rent for the home with her daughter's social security income check. Furthermore, the State produced evidence that Demoss was, at the time of the attack, under a court order, stemming from a prior Sexual Battery conviction related to Tangie, not to have any contact with either Tangie or the children. The evidence indicates that Tangie had control and custody over the house, and that Demoss did not reside there. Based upon this evidence, we conclude that there is sufficient evidence in this record to prove that Demoss had no privilege to be in the home, thereby satisfying the element of trespass.
With regard to the element of purpose to commit a criminal offense during the course of the trespass, the Ohio Supreme Court has held that a defendant may form the requisite purpose at any point during the course of a trespass. State v. Fontes (2000), 87 Ohio St.3d 527, 530. In this case, the State produced evidence that, while in the home, Demoss physically assaulted and raped Tangie Demoss. From this evidence, a reasonable juror could infer that Demoss formed the purpose to commit a Rape or Felonious Assault offense during the course of the trespass.
Finally, the evidence presented by the State was more than sufficient to show that Tangie Demoss suffered physical harm as a result of the encounter. Tangie Demoss, the emergency room doctor, the responding paramedic, and the police all testified to Tangie's injuries sustained during the attack.
We conclude, notwithstanding Demoss's assertion to the contrary, that this constituted sufficient evidence to show that he entered the home with the purpose to commit an offense, and that he physically harmed Tangie during the commission of the offense.
Although an appellate court may determine that a judgment is supported by sufficient evidence, it nevertheless may conclude that the judgment is against the manifest weight of the evidence. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In determining whether a conviction is against to the manifest weight of the evidence, an appellate court:
 * * * sits as a "thirteenth juror" and may register its disagreement with the determinations of the fact-finder. The appellate "court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." From the last sentence quoted above it is clear that we must accord substantial deference to the fact-finder, and reverse on a manifest weight review only in extraordinary cases.
State v. Brewer (Mar. 17, 2000), Montgomery App. No. 17766, unreported, citations omitted.
Again, the State presented evidence upon which a jury could reasonably find that Demoss, by force, trespassed in Tangie Demoss's home. There is also ample evidence upon which a jury could reasonably find that Demoss caused physical harm to Tangie. Also, the jury could reasonably infer from the evidence that Demoss was angry at Tangie for contacting the police when he harassed her at the bar earlier in the evening, and that he entered the house with the intent to "punish" her for doing so. Therefore, we conclude that the jury did not lose its way when it found Demoss guilty of Aggravated Burglary.
We next turn to Demoss's claim that the State failed to present sufficient evidence to support his conviction for Rape, and that this conviction is against the manifest weight of the evidence. In support, Demoss argues that Tangie testified that the sex was consensual, not forced.
R.C. 2907.02(A)(2), states, "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Force" is defined as any violence, compulsion, or constraint physically exerted by any means. R.C. 2901.01(A)(1). The factual issue in this case was whether Demoss compelled Tangie to submit by force or threat of force, or whether she consented to having sex with appellant.
At the trial of this matter, Tangie did testify that the sex was consensual and that Demoss did not use force. However, the State submitted evidence contradicting Tangie's testimony. The evidence submitted by the State shows that after Demoss broke into the house, he began hitting Tangie and choking her until she passed out. Then, while restraining her, he ripped her underwear, flipped her over on her stomach, and proceeded to have anal intercourse with her. After the attack, Tangie called 911. She informed the dispatcher that she had been raped. She informed the paramedics that she "may have been sexually assaulted." She told the emergency room doctor that she was sexually assaulted.
Against the State's impressive evidence of forced sexual conduct, which was certainly sufficient for a Rape conviction, Demoss presented Tangie's testimony, at trial, that any sex was consensual. Tangie's trial testimony was impeached by her contradictory grand jury testimony. A reasonable jury might have concluded, from the state of the evidence in the record, that Tangie did not want the father of her children to be incarcerated for the length of time that a Rape conviction might bring, and that was the reason for her recantation with respect to the forced sexual conduct charge. We conclude that the jury did not lose its way when it found Demoss guilty of Rape.
Demoss's Fourth Assignment of Error is overruled.
 VI
Demoss's Fifth Assignment of Error states as follows:
 THE CUMULATIVE EFFECT OF ALL THE ERRORS RESULTED IN DENYING THE DEFENDANT A FAIR TRIAL.
Demoss argues that the cumulative effect of the errors in this case denied him a fair trial.
A conviction may be reversed if the cumulative effect of the errors deprives the defendant of a fair trial. State v. Moore (1998),81 Ohio St.3d 22, 41. When considered together, separately harmless errors may violate a defendant's right to a fair trial. State v.Madrigal (2000), 87 Ohio St.3d 378, 397. In order to determine if "cumulative" error is present, we must find that multiple errors were committed at trial. Id. at 398. Because we have found only one, harmless error, introduction of the 911 tapes as business records, cumulative error is impossible. Accordingly, the Fifth Assignment of Error is overruled.
 VII
All of Demoss's Assignments of Error being overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and BROGAN, J., concur.
[1] The next day, Tangie and Paul, Jr. noticed that the telephone box outside their house had been damaged.
[2] The call was transferred to the Urbana Police Department because the attack took place within that department's jurisdiction.